Opinion issued December 9, 2004






            











In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-03-01254-CR
__________
 
PATRICK HENRY DREWS, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 155th District Court
Austin County, Texas
Trial Court Cause No. 2001R-0139
 

 
 
MEMORANDUM OPINION
          A jury found appellant, Patrick Henry Drews, guilty of the offense of
aggravated sexual assault of a child


 and assessed his punishment at confinement for
30 years and a fine of $10,000. In 10 points of error, appellant contends that the
evidence was legally and factually insufficient to support his conviction; the trial
court erred in admitting the testimony of certain witnesses, admitting a blood sample
taken from appellant, and denying appellant’s motion for new trial on the grounds of
alleged jury and witness misconduct; and appellant’s trial counsel rendered
ineffective assistance of counsel.
          We affirm.
Factual and Procedural Background
          In November 2001, the complainant, who was six years old, lived with her
grandmother, Betty Kingston (Betty), and also stayed occasionally with her mother,
Nicole Kingston, and appellant at a mobile home. Betty testified that, on the evening
of November 28, 2001, she was at home watching television when the complainant,
who was staying with her, came into Betty’s room and asked her, “Can I tell you a
secret?” The complainant then made Betty promise not to tell anyone because
appellant had told the complainant that “they may come and kill [appellant].” After
Betty promised not to tell anyone, the complainant told her that appellant had told the
complainant that girls and boys have “sensitive spots” and that a girl’s sensitive spot
was inside and a boy’s sensitive spot was outside. The complainant also told Betty
that “you can take your tongue and swirl it around” and that “white stuff will come
out.” Betty subsequently contacted the authorities and was referred to Child
Protective Services (CPS).
          The complainant testified by means of a remote video camera from the trial
judge’s chambers that, if her mother had to work or go to the store, she would
sometimes leave the complainant alone at the mobile home with appellant. On one
such occasion, after her mother had left, appellant called the complainant into the
bedroom and told her that “he felt really bad, and he would like [her] to do something
to make him comfortable.” When the complainant asked appellant what he wanted
her to do, he told her that “what would make him feel comfortable would be if I put
my private on his,” and the complainant did as appellant asked. She further testified
that this subsequently occurred several times. She explained that sometimes, instead
of putting her “private on his,” appellant asked her to put her mouth on his penis and
she complied with appellant’s requests because she thought that “since he is older
than me I should obey him because he was sort of like a stepfather to me at the time.” 
Appellant told her not to tell anyone about his behavior because “somebody is
probably going to come and throw him in jail.”
          Jane Riley, a pediatric nurse practitioner, testified that she had been involved
in investigations of sexual abuse for about nine years and had examined
approximately 900 children. On November 30, 2001, based on a referral from CPS,
Riley interviewed the complainant and physically examined her. Reading from a
report that she had prepared concerning her interview of the complainant, Riley
testified, in part, as follows:
[The complainant] said that [appellant] said that it feels good to him
when she does something to his sensitive spot. She stated that she puts
her mouth on his sensitive spot, and then it feels good to him. She also
stated that he puts his sensitive spot on her sensitive spot, and that he
says it feels good. I asked her if it ever hurt her, and she said it does
hurt and it gets red because it’s hot, because after a while, I can’t feel it. 

During her physical examination of the complainant, Riley noticed some “redness”
around the complainant’s hymen, which she testified could have been caused either
by penetration or by “excessive irritation” and poor hygiene. Riley also found a hair
inside the complainant’s vagina. Riley described the hair as a “coarse,” short, pubic
hair.


 Riley removed the hair, placed it in an envelope, and gave it to a CPS
caseworker. She testified that, in her opinion, although the presence of the hair inside
the complainant’s vagina could have been caused by the insertion of a penis into the
complainant’s sexual organ, Riley did not consider this to be “conclusive proof” of
penetration of the complainant’s sexual organ by a male sexual organ.
          Texas Department of Public Safety (DPS) analyst Javier Flores performed a
visual comparison of the pubic hair removed from the complainant’s vagina and a
pubic hair sample obtained from appellant. Flores testified that both hairs “shared the
same characteristics.” Flores explained that he did not perform a nuclear DNA
analysis of the hair removed from the complainant because the root of the hair was
not present. The hair and samples of appellant’s pubic hair, blood, and saliva were
subsequently sent to the Federal Bureau of Investigation (FBI) for additional analysis.
          Karen Lanning, a forensic scientist in the FBI’s trace evidence unit, testified
that she examined the hair removed from the complainant and the pubic hair samples
taken from appellant. Lanning concluded that the hair removed from the complainant
“exhibited the same microscopic characteristics as the pubic hair samples identified
as coming from [appellant], and is therefore consistent with originating from him.” 
Douglas Hares, a forensic examiner in the FBI’s trace evidence unit, testified that he
performed a mitochondrial DNA analysis of the hair removed from the complainant
and of blood samples taken from appellant. Hares explained that the “mitochondrial
DNA sequences” obtained from the hair and from appellant’s blood samples are “the
same” and he could not exclude appellant as “a source” of the hair taken from the
complainant. Based on a comparison of the mitochondrial DNA sequences found in
appellant’s blood and hair with sequences recorded in the FBI’s database of 1,814
Caucasians, Hares concluded that there is an “estimated frequency” that the type of
sequences found in the samples of appellant’s blood and hair “would be no more
common than .26% of the Caucasian population” and that “99.74% of the Caucasian
population would not be included as having this type.”
          Dr. Cassandra Bryant, a pediatrician called by appellant as an expert witness,
testified that, in her opinion, the documentation and report prepared by Riley of the
interview of the complainant, as well as the physical examination Riley performed,
were inadequate and incomplete. Dr. Bryant testified that, if the hair found in the
complainant had, in fact, been present for more than a few days, “a serious infection”
would have developed. Dr. Bryant also testified that, if the complainant’s vagina had
been penetrated by an adult male’s penis, significant evidence of bruising, tearing,
and scarring would have been observed in the posterior region of the complainant’s
hymen. No infection or any of the conditions described by Dr. Bryant were visible
in the photographs of the complainant’s genitals admitted into evidence or noted to
have been found by Riley in her report. However, on voir dire, Dr. Bryant testified
that tearing, bruising, or scarring would not have resulted if appellant had “rubbed his
penis” on or “right inside” the complainant’s outer labia.
          Appellant testified that he never acted in a sexual way toward the complainant,
touched her in an inappropriate manner, or had any sexual contact with her. 
Appellant stated that he and the complainant’s mother had, on at least one occasion,
caught the complainant watching them, through a crack in a door, as they engaged in
sexual activity. Appellant also told the jury that, shortly after he was arrested in this
case, he was so distraught that he attempted suicide by injecting air into his
bloodstream with a goat syringe.
Sufficiency of the Evidence
          In his first and second points of error, appellant argues that the evidence was
legally and factually insufficient to support his conviction because the State “failed
to introduce any evidence to show that there was penetration of the sexual organ of
the [complainant] by the sexual organ of [appellant].”
          We review the legal sufficiency of the evidence by viewing all of the evidence
in the light most favorable to the verdict to determine if any rational fact finder could
have found the essential elements of the offense beyond a reasonable doubt. King v.
State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). In our review of the factual
sufficiency of the evidence, we view all of the evidence neutrally, and we ask whether
the evidence, both for and against the finding, demonstrates that the proof of guilt is
so obviously weak as to undermine confidence in the jury’s determination, or whether
the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary
proof. Zuniga v. State, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004). Under both
a legal and sufficiency review, we may not substitute our own judgment for that of
the fact finder. King, 29 S.W.3d at 562; Johnson v. State, 23 S.W.3d 1, 12 (Tex.
2000).
          A person commits an offense if the person intentionally or knowingly causes
the penetration, by any means, of the sexual organ of a child younger than 14. Tex.
Pen. Code Ann. § 22.021(a)(1)(B), (a)(2)(B) (Vernon Supp. 2004-2005). Here, the
indictment charged that appellant “did knowingly or intentionally cause the
penetration of the female sexual organ of [the complainant] . . . by his sexual organ
. . . .” (Emphasis added.) The jury charge tracked the language of the indictment.
          With regard to the term “penetration” used in the Penal Code, the Court of
Criminal Appeals has noted as follows:
[I]n common parlance, mere contact with the outside of an object does
not amount to a penetration of it. But pushing aside and reaching
beneath a natural fold of skin into an area of the body not usually
exposed to view, even in nakedness, is a significant intrusion beyond
mere external contact. Consequently, it is not ungrammatical to describe
[the defendant’s] touching of [the complainant] in this case as a
penetration, so long as contact with the injured part of her anatomy
could reasonably be regarded by ordinary English speakers as more
intrusive than contact with her outer vaginal lips.

Vernon v. State, 841 S.W.2d 407, 409-10 (Tex. Crim. App. 1992). In Vernon, the
court noted that, although the evidence indicated that the defendant had touched the
complainant “beneath the fold of [her] external genitalia,” it was undisputed that the
defendant had not penetrated the complainant’s vaginal canal. Id. at 409. The Court
of Criminal Appeals held that the Penal Code’s use of the phrase “penetration of the
female sexual organ” included the type of contact proven in that case. Id. at 409-10;
see Tex. Pen. Code Ann. § 22.021(a)(1)(B).
          In regard to the legal sufficiency of the evidence, we note that the State
presented testimony from Riley that the complainant told her that appellant had put
“his sensitive spot on her sensitive spot.” Riley also testified that she found what
appeared to be a pubic hair inside the six-year-old complainant’s vagina. DPS analyst
Flores testified that his visual analysis of the hair removed from the complainant and
samples obtained from appellant indicated that they “shared the same characteristics.” 
The State also presented evidence from FBI forensic scientist Lanning that the hair
removed from the complainant “exhibited the same microscopic characteristics” as
the pubic hair samples obtained from appellant and was “consistent with” having
originated from him. FBI forensic analyst Hares testified that blood obtained from
appellant had the same mitochondrial DNA sequences as the hair removed from the
complainant, and he estimated that over 99 percent of the Caucasian population
would not be included as having the same type of mitochondrial DNA sequences as
those of appellant. Finally, the State offered the testimony of the complainant that,
on several occasions, she had complied with appellant’s requests to “put [her] private
on his.”
          The evidence presented here is analogous to that presented in Vernon in that
no medical testimony or other evidence conclusively indicated that appellant had
penetrated the complainant’s vaginal canal. 841 S.W.2d at 409-10. However, as the
Court of Criminal Appeals has held, the State need not prove such complete
penetration to establish the commission of an offense under the Penal Code. Id.; see
Tex. Pen. Code Ann. § 22.021(a)(1)(B). It need only prove, beyond a reasonable
doubt, some penetration of a complainant’s female sexual organ more intrusive than
mere contact with the complainant’s outer labia. Vernon, 841 S.W.2d at 409-10; Tex.
Pen. Code Ann. § 22.021(a)(1)(B).
          Viewing the evidence in the light most favorable to the verdict, we hold that
a rational fact finder could have reasonably concluded, beyond a reasonable doubt,
that appellant had penetrated the complainant’s sexual organ. Accordingly, we hold
that the evidence was legally sufficient to support appellant’s conviction.
          In regard to the factual sufficiency of the evidence, appellant emphasizes that
the complainant did not testify that “appellant penetrated her sexual organ with
anything.” Additionally, Riley testified that she did not see “conclusive evidence”
that the complainant’s sexual organ had been penetrated, and she conceded that the
redness that she observed around the complainant’s hymen could have been caused
simply by irritation or by poor hygiene. Appellant also presented the expert
testimony of Dr. Cassandra Bryant that Riley’s interview and examination of the
complainant were inadequate and incomplete. In Dr. Bryant’s opinion, the hair found
in the complainant could not have been present for “more than a few days” because
the complainant had exhibited no signs of infection. Dr. Bryant also testified that,
because there was no evidence of bruising, tearing, or scarring in the area around the
complainant’s hymen, it was unlikely that her vagina had been penetrated by an adult
male’s penis. However, Dr. Bryant conceded that, had appellant rubbed his penis on
or just inside the complainant’s outer labia, no signs of tearing or scarring would have
appeared. Appellant denied that he had ever touched the complainant in an
inappropriate manner or had any sexual contact with her.
          However, as noted in our discussion of the legal sufficiency of the evidence,
the State presented ample circumstantial evidence to show that appellant penetrated
the complainant’s sexual organ. The evidence presented in this case, particularly the
expert witness testimony, raised questions of credibility for the jury to resolve. As
the exclusive judges of the facts, the credibility of the witnesses, and the weight to be
given their testimony, the jurors were free to believe or to disbelieve all or any part
of the witnesses’ testimony. McKinny v. State, 76 S.W.3d 463, 468-69 (Tex.
App.—Houston [1st Dist.] 2002, no pet.). Where conflicting testimony is given, as
in this case, it is the exclusive province of the jury to reconcile conflicts in the
evidence. Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). Here, the
jury chose to resolve the conflicts in the evidence against appellant, and we defer to
their determination of the factual issues presented. See Johnson, 23 S.W.3d at 8.
          Viewing all of the evidence neutrally, we hold that the proof of guilt was not
so obviously weak as to undermine our confidence in the jury’s determination and
that the proof of appellant’s guilt was not greatly outweighed by contrary proof. See
Zuniga, 144 S.W.3d at 484-85. Accordingly, we hold that the evidence was factually
sufficient to support appellant’s conviction.
          We overrule appellant’s first and second points of error.
Witness Testimony
          In his third, fifth, seventh, and ninth points of error, appellant contends that the
trial court erred in admitting into evidence the testimony of Jane Riley, Javier Flores,
Douglas Hares, and Betty Kingston. However, the record indicates that appellant’s
trial counsel did not object to the testimony of these witnesses at trial. Thus,
appellant has preserved nothing for our review under these points. Tex. R. App. P.
33.1. Accordingly, we overrule appellant’s third, fifth, seventh, and ninth points of
error.
Blood Sample
          In his fourth and sixth points of error, appellant contends that the trial court
erred in admitting into evidence State’s exhibit number 10, which was a blood sample
taken from appellant. However, the record indicates that appellant’s trial counsel did
not object to the admission of the blood sample at trial. Thus, appellant has preserved
nothing for our review under these points. Tex. R. App. P. 33.1. Accordingly, we
overrule appellant’s fourth and sixth points of error.
Motion for New Trial
          In his eighth point of error, appellant contends that the trial court erred in
denying his motion for new trial on the grounds of alleged jury and witness
misconduct.
          We review a trial court’s decision to deny a defendant’s motion for new trial
under an abuse of discretion standard. Salazar v. State, 38 S.W.3d 141, 148 (Tex.
Crim. App. 2001). We do not substitute our judgment for that of the trial court, but
simply determine whether the trial court’s analysis was arbitrary or unreasonable. Id. 
The trial court is the sole judge of the credibility of any testimony offered. Id. The
trial court is given great deference and may be overruled only if its decision is
arbitrary or unreasonable. Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995).
          Here, appellant alleges that (1) during a break in the trial, the complainant’s
family members ate lunch at a table adjoining the table where members of the jury
were eating; (2) members of the complainant’s family “repeatedly congregated in
close proximity to members of the jury who were on break or going to or from the
jury assembly area, and in the narrow foyer of the courtroom”; and (3) during the
trial, the complainant’s grandfather was seated in a wheelchair next to the jury box. 
Appellant argues that, “[t]he cumulative effect of all these contacts created a climate
where the jury was constantly barraged with visual and auditory ‘testimony’ against
which appellant could not respond.”
          However, appellant does not present evidence of anything other than incidental
contacts between members of the complainant’s family and the jurors. Nor does
appellant present any evidence to indicate that such contacts, in fact, influenced the
jury’s deliberations. Accordingly, we hold that the trial court did not abuse its
discretion in denying appellant’s motion for new trial on the grounds of jury and
witness misconduct.
          We overrule appellant’s eighth point of error.
Ineffective Assistance of Counsel
          In his tenth point of error, appellant argues that his trial counsel rendered
ineffective assistance because “[t]he cumulative effect of the errors committed in the
presentation of the scientific testimony, the failures to object to presentations of
scientific evidence offered without a proper predicate, the failure to demand an outcry
summary, the outcry testimony itself, the misconduct of both the jurors and the
[S]tate’s witness, the lack of objections by defense counsel on impeachment
examination of appellant, the lack of discovery and the lack of requests for limiting
instructions all denied the accused of a fair and impartial consideration of the facts,
and resulted in error.”
          To prevail on a claim of ineffective assistance of counsel, a defendant must
demonstrate that counsel’s representation fell below an objective standard of
reasonableness based on prevailing professional norms, and that, but for counsel’s
errors, there is a reasonable probability that the result of the proceeding would have
been different. Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 2064-65 (1984); Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). It is an
appellant’s burden to prove a claim of ineffective assistance of counsel by a
preponderance of the evidence. Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim.
App. 1999). An appellant must satisfy both prongs of the Strickland test, or the claim
of ineffective assistance will fail. 466 U.S. at 697, 104 S. Ct. 2069; Garcia v. State,
57 S.W.3d 436, 440 (Tex. Crim. App. 2001).
          Here, appellant asserts that “[t]he most glaring error” committed by his trial
counsel was counsel’s failure to demand that, before trial, the State provide notice of
its intent to admit outcry witness testimony as well as the name of the witness and a
written summary of the anticipated testimony. See Tex. Code Crim. Proc. Ann. art.
38.072, § 2(b) (Vernon Supp. 2004-2005). In its brief to this Court, the State
represents that it timely complied with the requirements of article 38.072 by
providing appellant’s trial counsel with notice of and a summary of the anticipated
outcry testimony. However, because the record does not indicate whether such notice
was or was not provided, appellant has not shown that his trial counsel was deficient
on this point.
          Appellant also asserts that his trial counsel was ineffective in failing to obtain
a ruling on his motion in limine. The record indicates that, at a pre-trial hearing, the
trial court discussed several issues raised by appellant’s motion with trial counsel for
appellant and for the State. The trial court did not deny any portion of appellant’s
motion, but instead chose to take up matters addressed by the motion during the trial.
          In his reply brief, appellant argues that his counsel was ineffective in failing
to preserve error concerning (1) the testimony of Riley, Flores, Hares, and Kingston;
(2) the admission of appellant’s blood sample into evidence; and (3) the trial court’s
rulings on appellant’s discovery motions. With regard to these claims of ineffective
assistance, although appellant emphasizes that his trial counsel’s failure to preserve
error “gives legitimacy” to his ineffective assistance claims, appellant does not cite
this Court to any authority to support his arguments that, had his trial counsel made
objections to the testimony and or to evidence complained of, such objections would
have been meritorious. For example, appellant has not presented any authority to
support his contention that, upon objection, the trial court likely would have excluded
the expert testimony offered by the State concerning the comparison of the hair
removed from the complainant to hair and blood samples obtained from appellant. 
In addition, and contrary to appellant’s contentions, our review of the record indicates
that the State proved up the chain of custody of both the hair removed from the
complainant and the hair and blood samples obtained from appellant.
          Appellant also does not identify the specific objectionable questions asked of
him during the State’s cross-examination and does not explain what objections trial
counsel could have raised to such questions. Further, appellant does not explain what
limiting instructions his trial counsel failed to request, or what pre-trial discovery his
trial counsel failed to obtain. Similarly, appellant does not cite this Court to any
authority to support his arguments that any such objections, requests for instructions,
or discovery would have been meritorious.
          Accordingly, we hold that appellant has not shown, by a preponderance of the
evidence, that his trial counsel’s representation was deficient; that is, it fell below an
objective standard of reasonableness based on prevailing professional norms. 
Strickland, 466 U.S. at 694, 104 S. Ct. at 2064-65; Hernandez, 726 S.W.2d at 57.
          We overrule appellant’s tenth point of error.
 
Conclusion
          We affirm the judgment of the trial court.
 

                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Taft, Jennings, and Bland.

Do not publish. Tex. R. App. P. 47.2(b).