**Michael REED, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 10–05–00144–CR.

Court of Appeals of Texas,
Waco.

Dec. 20, 2006.

Opinion Dissenting on Denial of
Rehearing Feb. 13, 2007.

David S. Barron, Bryan, for appellant.

Bill R. Turner, Brazos County Dist. Atty., Bryan, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

Appellant, Michael Reed, was convicted of misdemeanor assault and deadly conduct. He was sentenced to one year of confinement in jail, probated for two years, and a $500 fine for the misdemeanor assault charge and four years in prison, probated for eight years, and a $2,000 fine for the deadly conduct charge. Reed raises two issues on appeal.

## Background

On December 5, 2002 before Michael left for work as a security guard, he and his twin brother, Christopher Reed, had a dispute concerning Christopher's installing a deadbolt on a bedroom door at the home they shared. When he returned home from work later in the evening, Michael found Christopher installing the deadbolt and two of his friends, Jonathan Shenkir and Charlie Brown, playing computer games.

Michael entered Christopher's room still wearing his gun belt and pistol, an expandable baton, and an "asp." After a brief conversation, Michael forced Christopher to the ground with his baton. The brothers wrestled on the floor, and Michael then produced the "asp" and applied it to Christopher's rib cage. Christopher found a pool cue and threatened his brother with it. In response, Michael pulled out his firearm and pointed it at him for approximately twenty seconds before putting it back in its holster. The brothers continued wrestling, and Christopher forced Michael out of his room. Jonathan followed them into the hallway and attempted to get Michael's weapons away from him. During the struggle, Michael fired the gun into the hallway wall.

## Legal Sufficiency

In his first issue, Reed complains that the evidence is legally insufficient to establish deadly conduct as alleged in the indictment.

When reviewing a challenge to the legal sufficiency of the evidence to establish the elements of a penal offense, we must determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The standard is the same for both direct and circumstantial evidence cases. *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim.App.1999). We do not resolve any conflict of fact or assign credibility to the witnesses, as this was the function of the trier of fact. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App.1999); *Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App.1992). Instead, our duty is to determine if the findings of the trier of fact are rational by viewing all of the evidence admitted at trial in the light most favorable to the verdict. *Adelman*, 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex.Crim.App.2000).

■ In the context of Reed's charging instrument, a person commits the offense of deadly conduct by knowingly discharging a firearm at or in the direction of a habitation, building, or vehicle and is reckless as to whether the habitation, building, or vehicle is occupied. TEX. PEN.CODE ANN. § 22.05(b)(2) (Vernon 2003).

Reed specifically complains that the evidence is insufficient to show that he discharged a firearm "at or in the direction of a habitation." He argues that this language was intended to apply to individuals discharging a firearm "from outside of the residence with an aim directly toward the habitation or in its direction."

■ The Penal Code does not define the term "at or in the direction of." Words not specifically defined by the legislature are to be understood as ordinary usage allows, and jurors may thus freely read statutory language to have any meaning which is acceptable in common parlance. *Vernon v. State,* 841 S.W.2d 407, 409 (Tex. Crim.App.1992). Specific to challenges to the sufficiency of the evidence, reviewing courts cannot use definitions of common words that are more restrictive than, or in any ways different than, the possible ordinary meaning that the jury was authorized to give such words. *See id.* Further, in addition to construing words and phrases of a statute according to the rules of grammar and common usage, reviewing courts must read the statute in context. TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005).

We agree with Reed that, considering common usage of the term and reading it in context, "discharging a firearm at or in the direction of a habitation" assumes that the actor is outside the habitation.[1] The

testimony presented at trial indicates that Reed was inside his home at the time he discharged the firearm. Accordingly, we find that a rational trier of fact could not have found beyond a reasonable doubt the essential elements of deadly conduct. We sustain Reed's first issue.

## Modification of Judgment

■ In his second issue, Reed complains that the written judgment of conviction as to count one of the indictment, misdemeanor assault, incorrectly assesses punishment of one year in the "Institutional Division–TDCJ probated for two years." The judgment also recites an imposed sentence of "state jail imprisonment." The trial court pronounced the sentence as "confinement in the Brazos County jail for a period of one year ... probated for two."

The offense of assault under Texas Penal Code section 22.01(a)(1) is a Class A misdemeanor with a maximum punishment of one year in jail and a $4,000 fine. *See* TEX. PEN.CODE ANN. § 22.01(a)(1) and (b) (Vernon Supp.2006); TEX. PEN.CODE ANN. § 12.21 (Vernon 2003).

The State agrees and the record reflects that the written judgment is incorrect. The State joins Reed in requesting that this court modify the judgment to reflect confinement in the Brazos County jail for a period of one year, probated for two years. *See* Tex.R.App. P. 43.2(b).

We sustain Reed's second issue, modify the judgment as requested, and affirm the judgment as to count one.

## Conclusion

Having sustained Reed's two issues, we reverse the trial court's judgment and render a judgment of acquittal on the offense

---

1. It appears the purpose of adding this offense to the statute was to increase the penalties for drive-by shootings.

of deadly conduct and modify and affirm the judgment as to the offense of misdemeanor assault.

Chief Justice GRAY dissenting.

TOM GRAY, Chief Justice, dissenting.

"That depends on what your definition of ... [at] is." (Bill Clinton; quotation supplied by ThinkExist.com.) (I believe this quote was in response to a question regarding Clinton's relationship with Monica Lewinski.).

In the context of discharging a firearm, what does it mean to shoot "at" something? According to Bubba, when he shot at the juke box and hit it, it was not the reckless discharge of a gun because, in Bubba's words, "reckless hell I hit just where I was aimin'." MARK CHESNUTT, *Bubba Shot the Jukebox*, on LONGNECKS AND SHORT STORIES (Universal 1992). But we know that just because you hit what you are aiming at does not make the discharge any less reckless, or any more lawful. Thus we know that Bubba's definition is too narrow to be used in connection with defining "at" for purposes of the Penal Code provision.

Likewise, I would suggest that the majority opinion has put far too narrow of a definition upon the word. Black's Law Dictionary discusses the term as follows:

> **At.** A term of considerable elasticity of meaning, and somewhat indefinite. A function word to describe or indicate presence or occurrence in, on, or near; or to indicate the means, cause, or manner; or to indicate that with which one is occupied or employed. As used to fix a time, it does not necessarily mean *eo instante* or the identical time named, or even a fixed definite moment. Often expresses simply nearness and proximity, and consequently may denote a reasonable time.

BLACK'S LAW DICTIONARY 124 (6th ed.1990).

Obviously "at" is a word with a very wide range of uses and meaning. So much so that its "elasticity" is noted in this venerable legal reference book.

But the jury would not have a legal dictionary in the jury room. So how is "at" defined in an ordinary dictionary? The American Heritage College Dictionary defines "at" as follows:

> **At** ... **1.a.** In or near the area occupied by; in or near the location of; *at the market.* **b.** In or near the position of; *at the center of the page.* **2.** To or toward the direction of, esp. for a specific purpose: *Questions came at us from all sides.* **3.** Present during; attending: *at the dance.* **4.** Within the interval or span of: *at a glance.* **5.** In the state of: *at peace.* **6.** In the activity or field of: *good at math.* **7.** To or using the rate, extent, or amount of; to the point of: *at 350° F.* **8.** On, near, or by the time or age of: *at three o'clock.* **9.** On account of; because of. **10.** By way of; through: *exited at the rear gate.* **11.** In accord with; following: *at my request.* **12.** Dependent upon: *at the mercy of the court.* **13.** Occupied with: *at work.*—**idiom. At it.** *Informal.* Engaged in verbal or physical conflict.

THE AMERICAN HERITAGE COLLEGE DICTIONARY 85 (3d ed.1997). The Merriam Webster's Collegiate Dictionary defines "at" as "used as a function word to indicate presence or occurrence in, on, or near." THE MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 72 (10th ed.1993).

In the context of the Penal Code, this case, according to the majority, turns upon whether the "actor is outside the habitation." Balderdash.

The majority's definition is only one of many that could be used by a jury in evaluating the evidence. Because the term is not defined in the statute the jury is not limited to the definition the majority would like to use. The jury could use any common usage of the term.

I need go no further than the first definition in the general dictionary cited above to know that the majority's reading is entirely too restrictive. If "at" means "in or near" then I have no problem determining that the jury was within its prerogative to determine that Reed fired the gun "at" the house. Maybe an English linguistic expert could analyze it in such a manner as to construct the argument that such a use is improper, but the average juror in Texas is not, no disrespect intended, a linguistic expert.

Let us examine the issue from a different perspective, literally. Should the result in this appeal be different if the struggle occurred on the porch or in the yard rather than in the hall? I think not. But under the majority's analysis, if they struggled on the porch or in the yard, then the conviction stands; but if the same struggle occurs in the hall, it does not? That seems terribly illogical.

Let us examine the issue from yet another perspective, literally. The perspective is from that of the house. Oh, if only walls could talk. If the house could tell us how it felt about it I have no doubt that it would say, "Let us not forget that the bullet came to rest in my wall." There is no indication that it came to rest there as a result of a ricochet. Because bullets tend to leave the gun from which they were fired in a straight line, the location of where the bullet stopped is all but conclusive evidence that the gun was pointed "at" the wall, a part of the house, when it was discharged. So from the perspective of the habitation: "Not only did Reed shoot at me, he hit me!"

Based upon the foregoing, I conclude that the jury was well within the bounds of being rational when it determined, based upon the evidence, that Reed discharged "a firearm at or in the direction of a habitation." From the jury's perspective, Reed could hardly have missed.

I dissent.

TOM GRAY, Chief Justice, dissenting on motion for rehearing.

Today a majority of the Court denies rehearing to consider whether to shoot "at" something you necessarily have to be outside of it. I dissented on original submission and write this as a supplement to my original dissenting opinion and to the denial of the motion for rehearing.

In my original dissenting opinion, I used an example from music; today's example comes from the movies. As you may recall, near the end of the movie, *Men In Black*, Tommy Lee Jones, whose character in the movie was "K," had his weapon taken away from him by an alien, the bug. The bug swallowed K's weapon. K then enticed the bug to swallow him too. Moments later, as "J," played by Will Smith, tries to "negotiate" with the bug, you hear the high pitched sound of the weapon as it energizes. J tells the bug "too late" whereupon K, from *inside* the bug, fires his weapon. The bug explodes. *Men in Black* (Amblin Entertainment 1997) (motion picture). In this Hollywood moment lives the graphic example that you can be inside something and still shoot "at" it.

Similarly, if Jonah had a weapon, he probably would have shot "at" the "big fish" that swallowed him too. *See* Jonah 1:17.

With these additional comments, I respectfully dissent to the denial of the motion for rehearing.

Justices VANCE and Justice REYNA voting to deny the motion for rehearing do not join this dissenting opinion.