COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ROY DANIEL MUNN, | § | No. 08-07-00294-CR |
| Appellant, | § | Appeal from the |
| v. | § | 401st Judicial District Court |
| | § | |
| THE STATE OF TEXAS, | § | of Collin County, Texas |
| | § | |
| Appellee. | § | (TC#401-80100-06 ) |
| | § | |

## O P I N I O N

This is an appeal from a conviction on four counts of aggravated sexual assault of a child and one count of indecency with a child by contact. Appellant challenges the legal sufficiency of the evidence and whether he received effective assistance of counsel. We affirm.

K.P. was sleeping when she heard her mother and stepfather, Daniel Munn, yelling about a towel. K.P. went to the top of the staircase, and saw her mom sitting down trying to put her shoes on. K.P. saw Appellant standing over her mother and thought he was going to hit her mother. Appellant turned around, saw K.P., and threw a boot at K.P., which hit her head and the hand she tried to block it with. Then, the Appellant ran up the stairs and told K.P. to get back to bed.

Andrea Munn, K.P.'s mother, took her children to school the next day, and then called her neighbor and friend, Sharee Hicks, and asked to visit and talk about the previous night's incident. They talked and at some point, Ms. Munn called the police. Police officers came to Ms. Hicks' home, and after they told Ms. Munn that they would like to speak to K.P., K.P.'s

mother picked K.P. up from school.

Detective Chris Burns was one of the officers who responded to the call by Ms. Munn, and handled the investigation of the case. Det. Burns obtained a written statement from Ms. Munn at the police station and interviewed K.P. Det. Burns spoke to K.P. about what she saw happen between her mom and step-dad and what happened to her. Det. Burns asked K.P. if there was anything else she wished to talk about. Det. Burns said K.P. hung her head, started wringing her hands, and her mouth started quivering. Det. Burns asked her if she would feel more comfortable speaking to somebody else such as a female officer. There were no female officers, so he asked Ms. Hicks if she would sit with K.P., and see if she opened up to her. Det. Burns told Ms. Hicks to not ask any questions, but just make her feel comfortable to see if we could figure out what was going on.

Ms. Hicks testified that K.P. told her that Appellant had touched her. She asked K.P. if she wanted to show her where, but K.P. said no. K.P. had a stuffed animal, and Ms. Hicks said she told K.P. that she could demonstrate where the touching had been using the toy. K.P. pointed between the legs of the toy. K.P. then told her about an incident that happened between her and Appellant. K.P. said that Appellant had called her into his bedroom, and made her lock the door. He told her to take off her clothes and lay down on the end of the bed. He covered her head with a towel, and she said he bent over her and she felt something between her legs. K.P. did not tell her anything else, only that he was putting something between her legs. K.P. told her that it happened more than once.

K.P. testified that sometimes when her mother was gone, he would take her into his bedroom and lock the door. He would tell her to take off her clothes, put her on the bed, and

then take his clothes off. She would be on her hands and knees, and he would be standing up behind her. K.P. said he would touch her in places he is not supposed to. He would touch her with his private parts. His privates would touch her front and back private parts. K.P. said that his private would touch her front private from the back through her legs. K.P. said his hand also touch both her front and back privates. She said that when he touched her, it was on the skin of her privates not on her clothes. K.P. did not see his private, but thought it was because he had his clothes off, and it did not feel like anything else. K.P. said that he would put a towel over her face, so she could not see him. K.P. stated that there was not always a towel over her face. The first touching started around when K.P. was six and stopped when she was nine. Appellant never asked her to touch his body. One time, he went to the bathroom, and told her not move. When he came out, he put some type of liquid on her front and back privates. K.P. stated that it did not hurt, when asked how it felt.

Carol Goldberg, a registered nurse and certified sexual assault nurse testified at trial. K.P. told her that her stepfather would put his fingers on her behind and on the front part of her private. He always went to the bathroom to get stuff, but she did not know what he was getting. He told her not to tell anyone. Ms. Goldberg stated in here experience that about eighty-five percent of the non-acute exams show no trauma. An acute exam is one which occurs within seventy-two to ninety-six hours of the assault. Ms. Goldberg did not find any trauma to K.P.'s anus or sexual organ. Ms. Goldberg stated that rubbing could be penetration if it went passed a certain point, and that there could be penetration from rubbing the female sexual organ with liquid. On cross-examination, she agreed that she did not receive any information from K.P. about penetration, and only talked about his finger not his private.

Daniel Munn testified on behalf of himself. He stated that he was arguing with his wife about a towel, but when he threw the boot, he did not mean to hit K.P. rather just scare her so she would go back to her room. He stated that his relationship with Ms. Munn had been deteriorating, and he had told her that night that he thought they should separate. Appellant was shocked and devastated at the allegation of sexual abuse. He strongly denied the allegations, and did so again in court. Appellant said he could never had done something like that to K.P. On cross-examination, Appellant stated that he kept a sexual lubricant in his bathroom.

In Count I, Appellant was convicted of aggravated sexual assault of a child by intentionally and knowingly causing contact with the female sexual organ of K.P., a child younger than fourteen years of age and not the spouse of the defendant, by means of defendant's male sexual organ, and sentenced to fifteen years' in prison. In Count II, Appellant was convicted of aggravated sexual assault of a child by intentionally and knowingly causing contact with the anus of K.P., a child younger than fourteen years of age and not the spouse of the defendant, by means of defendant's male sexual organ, and sentenced to five years' in prison to run consecutively. In Count III, Appellant was convicted of aggravated sexual assault of a child by intentionally and knowingly causing the penetration of the female sexual organ of K.P., a child younger than fourteen years of age and not the spouse of the defendant, by means of an object unknown to the grand jury, and sentenced to five years' in prison to run consecutively with Counts I and II. In Count V, Appellant was convicted of aggravated sexual assault of a child by intentionally and knowingly causing the penetration of the female sexual organ of K.P., a child younger than fourteen years of age and not the spouse of the defendant, by means of defendant's finger, and sentenced to five years' in prison to run concurrently. In Count VII, Appellant was

convicted of indecency with a child by intentionally and knowingly, with the intent to arouse and gratify the sexual desire of said defendant, engaged in sexual contact by touching the anus of K.P., a child younger than seventeen years of age and not the spouse of the defendant, by means of an object unknown to the grand jurors, and sentenced to ten years' in prison to run concurrently.

In Issue One, Appellant argues he received ineffective assistance of counsel by failure of counsel to cross-examine K.P. and failure to conduct a thorough examination of Appellant while on the witness stand.

Ineffective assistance of counsel claims are reviewed under a two-pronged test. First, an appellant must establish counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Mallet v. State*, 65 S.W.3d 59, 62-3 (Tex.Crim.App. 2001). Secondly, the appellant must establish that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994). Prejudice is established by a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Mallet*, 65 S.W.3d at 63. Claims of ineffective assistance must be proved by a preponderance of the evidence. *Bone v. State*, 77 S.W.3d 828, 835 (Tex.Crim.App. 2002).

When reviewing an ineffective assistance claim, we must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and the appellant must overcome the presumption that the challenged conduct can be considered sound

trial strategy. *Jackson*, 877 S.W.2d at 771. Allegations of ineffectiveness must be firmly founded in the record. *Mallet*, 65 S.W.3d at 63. The record on direct appeal will generally be insufficient to show that counsel's representation was so deficient as to meet the first prong of the *Strickland* analysis because the reasonableness of counsel's choices often involve facts that do not appear in the appellate record. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex.Crim.App. 2003). An appellant challenging trial counsel's performance faces a difficult burden and a substantial risk of failure. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App. 1999).

Appellant argues it was ineffective assistance of counsel to not cross-examine K.P. and counsel did not thoroughly examine Appellant on the witness stand. The record does not show that counsel had an unprofessional reason for not cross-examining K.P. or for the extent of direct examination of Appellant. There was no motion for new trial filed, and thus no explanation by counsel regarding his decisions at trial. To overcome the first prong of *Strickland*, the appellant must produce a record affirmatively demonstrating the objectively unprofessional conduct. *See Bone*, 77 S.W.3d at 835. Without such a record, we are bound by the presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and the challenged actions can be considered reasonable trial strategy. *Jackson*, 877 S.W.2d at 771. Without proof of unprofessional conduct, we cannot determine that Appellant's defense was prejudice by the representation. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *Jackson*, 877 S.W.2d at 771. Issue One is overruled.

In Issue Two, Appellant argues that the evidence is legally insufficient to prove penetration as alleged in Counts III, V, and VI of the indictment. In reviewing the legal sufficiency of the evidence, we consider all of the evidence in the light most favorable to the

verdict and determine whether a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). We must give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inference from basic facts to ultimate facts." *Hooper*, 214 S.W.3d at 13, *citing Jackson*, 443 U.S. at 318-19, 99 S.Ct. at 2781.

A person commits the offense of aggravated sexual assault of a child if he intentionally or knowingly causes the penetration of the anus or sexual organ of a child by any means. TEX.PENAL CODE ANN. § 22.021 (a)(1)(B)(i)(Vernon Supp. 2009). Appellant argues that K.P.'s testimony supports a finding of contact, but that she did not testify to penetration. Count III and V both required penetration of the female sexual organ while Count VI required penetration of the anus. Appellant was not convicted under Count VI, but rather was convicted under Count VII for contact with the anus of K.P. We must therefore review whether the evidence was legally sufficient to support a finding of penetration of the female sexual organ under Counts III and V.

The slightest penetration of the female sexual organ is sufficient to prove penetration even though the vagina is not entered. *See Vernon v. State*, 841 S.W.2d 407, 409 (Tex.Crim.App. 1992). Penetration occurs where the contact is more intrusive than contact with the outer labia. *See id*. at 409. Proof of penetration may be circumstantial. *Id*. Additionally, a sexual assault victim need not testify as to penetration. *Villalon v. State*, 791 S.W.2d 130, 133 (Tex.Crim.App. 1990). The jury rationally could have inferred that Appellant penetrated K.P.'s sexual organ based on the evidence presented. *Villalon*, 791 S.W.2d at 133-34. K.P. testified that Appellant would have her naked on the bed on all fours. Appellant would be standing

-7-

behind her and touch her front and back private parts with his private. She stated Appellant would touch her front private from the back through her legs with his private. She stated that he would go to the bathroom to get something but did not know what it was, and the sane nurse repeated this testimony. Appellant stated on cross-examination that he had sexual lubricant in his bathroom. We find the evidence to be legally sufficient. Issue Two is overruled.

Additionally, the trial court certified that Appellant had a right to appeal but the certification does not contain the defendant's signature indicating that he was informed of his rights to appeal and file a *pro se* petition for discretionary review. The certification is defective but it has not been corrected by the trial court or Appellant's attorney. In order to remedy this defect, we ORDER Appellant's attorney, pursuant to TEX.R.APP.P. 48.4, to send Appellant a copy of our opinion and judgment, notify Appellant of his right to file a *pro se* petition for discretionary review, and inform Appellant of the pertinent deadlines. *See* TEX.R.APP.P. 48.4, 68. Appellant's attorney is further ORDERED to comply with all of the requirements of Rule 48.4.

Having overruled Appellant's issues, we affirm the judgment of the trial court.


March 17, 2010
                                        DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)