# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00684-CR

**Abel Medrano, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF LAMPASAS COUNTY, 27TH JUDICIAL DISTRICT
NO. 8602, HONORABLE C. W. DUNCAN JR., JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury found Abel Medrano guilty of sexual assault. The conviction was enhanced by felony convictions for delivery of marijuana and burglary of a habitation to which appellant pleaded true, and the jury assessed punishment at 35 years in prison. On appeal, appellant contends that the evidence was insufficient to show penetration of the victim's sexual organ. We will affirm the judgment of conviction.

### Standard of Review

When reviewing the sufficiency of the evidence to support a conviction, we consider all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The sufficiency of the evidence is measured by reference to

the elements of the offense as defined by a hypothetically correct jury charge for the case. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009).

In determining the legal sufficiency of the evidence, we must consider all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or the defense. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 318. A legal-sufficiency review requires us to defer to the jury's determinations of the witnesses' credibility and the weight to be given their testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The jury, as the exclusive judge of the facts, is entitled to weigh and resolve conflicts in the evidence and draw reasonable inferences therefrom. *Clayton*, 235 S.W.3d at 778; *see* Tex. Code Crim. Proc. art. 38.04. Thus, when faced with a record of historical facts that supports conflicting inferences, we must presume that the trier of fact resolved any such conflicts in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326.

The standard of review on appeal is the same for both direct and circumstantial evidence cases. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). Circumstantial evidence is as probative as direct evidence in establishing guilt and may alone be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). So long as "the verdict is supported by a reasonable inference, it is within the province of the factfinder to choose which inference is most reasonable." *Laster v. State*, 275 S.W.3d 512, 523 (Tex. Crim. App. 2009). Our

role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *Allen v. State*, 249 S.W.3d 680, 688 (Tex. App.—Austin 2008, no pet.).

The statute applicable in this case defines the offense as including penetration of the female sexual organ, which courts have deemed to be more than contact with the outside of the body, but not necessarily entry into the vaginal canal. *See* Tex. Penal Code § 22.011; *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992). In *Vernon*, the victim had a healing wound under the fold of the outer lips of her vagina, not actually inside the vagina but beneath the hymen. *Id.* The court concluded that the appellant's use of his finger in the area of the wound constituted penetration under the sexual assault statute. *Id.* at 409-10; *see also Karnes v. State*, 873 S.W.2d 92, 96 (Tex. App.—Dallas 1994, no pet.).

### Testimony and Evidence

The various witnesses' testimony about events leading up to the encounter between appellant and Lisa,[1] the complaining witness, was essentially similar. Lisa, appellant, and friends went to a bar after nine on a Friday night and stayed until the bar closed at 2 a.m. Lisa's friend Angela then drove her, appellant, and another man to a friend's house to continue their night. Lisa was intoxicated and opted to stay in the car, reclined in the passenger seat, while the others went up to the house. Angela testified that, while there, appellant asked about Lisa several times, and Angela told him Lisa was passed out in her car. Angela went to the restroom and, when she returned

---

[1] Lisa is the pseudonym for the complaining witness used in the trial court.

to the group, a partygoer suggested that she check on her friend. She went to her car and saw appellant thrusting as if he was having sex. Lisa testified that she did not remember anything from the time Angela left the car until awakening to hear Angela screaming and to find appellant just above her but not touching her at that point. Appellant then left the car through the driver's door, pulling his pants up as he exited. Lisa found that her shirt and bra were pushed up and her pants and shoes were on the floorboard. There was a stain on the seat that forensic scientific testing later identified as semen, with appellant as the likely contributor.[2]

Lisa did not want to talk to the police after the incident. She got dressed, had Angela take her to her car at the club, and drove home while Angela followed. Lisa removed her clothes and showered. By Monday, however, Lisa decided to go to the police. She gave her statement, as did Angela, and was examined by a Sexual Assault Nurse Examiner later that night.

Lisa testified that she did not remember whether appellant penetrated her vagina because she was unconscious during the encounter. She testified that she believed he had because, after the encounter, she was "wet down there." When she showered after returning home, she examined herself to see if she was bleeding because she "hurt down there." She was so uncertain of what had happened that on the Monday after she asked her friend Angela by text, "Do you think he had sex with me?" Lisa did not tell either the police or the nurse that appellant had penetrated her, but she did tell the nurse that she had pain, especially while urinating.

---

[2]   The Department of Public Safety crime lab's forensic scientist testified that "[t]he probability of selecting an unrelated person at random would be approximately one in 1.462 septillion for Caucasians, one in 55.19 septillion for blacks, and one in 1.77 sextillion for Hispanics."

The nurse examiner confirmed that Lisa reported pain "down there" generally and when she urinated. Although Lisa did not report penetration, the nurse wrote "there was penetration" based on her observation of Lisa's tenderness to touch and a half-centimeter abrasion on her hymen. The nurse testified that the abrasion could have been caused by penetration by appellant, but conceded that it could have other causes, including sex with someone else or Lisa vigorously cleaning herself. Lisa denied having sex with anyone else since six days before her encounter with appellant. Swab samples taken from Lisa did not reveal the presence of semen. The nurse also noted bruising on Lisa's elbows and knees.

Appellant called an expert who questioned the quality of the SANE nurse's report because she failed to record vital signs such as blood pressure and presented her conclusion that there was penetration instead of simply documenting what Lisa had reported. The expert also faulted the nurse for including appellant's report of the semen stain in the car without examining the car herself. She also testified that semen can be recovered from a person's body for at least four days after an encounter, so the swabs could have revealed its presence in Lisa if any was deposited or remained. The expert also testified that an abrasion to Lisa's hymen tissue should have healed if it had been caused by appellant 71 hours before the examination and that determining the age of a bruise was too subjective to be reliable.

The police investigator who took Lisa's statement testified that when he asked Lisa whether appellant penetrated her, she told him she could not remember. He said he collected the pants she wore the night of her encounter with appellant, but that the Department of Public Safety's crime laboratory did not test them. A forensic scientist from DPS's crime lab stated that he opted

not to test the pants because the semen on the car seat had identified appellant. The Lampasas investigator denied testimony that, when serving subpoenas on witnesses, he expressed disbelief that this offense was being prosecuted. He stated that he instead had agreed when the subpoenaed witness stated "I can't believe Medrano did what he did . . . ."

## Application

Appellant challenges the sufficiency of the evidence only of penetration of Lisa's female sexual organ in violation of Texas Penal Code section 22.011. There is undisputed evidence that Lisa was reclining in the front passenger seat of a vehicle, that appellant was seen thrusting as if he was having sex while facing the passenger seat, that he exited the vehicle putting on his pants, that Lisa's upper-body clothing was pushed up and her lower-body clothing was removed, and that appellant's semen was found on the front passenger seat. No one—not even Lisa—reported seeing appellant penetrate her, but Lisa testified that she believed he had penetrated her because she noted wetness after their encounter and because she felt pain in her vagina. The SANE nurse observed an abrasion consistent with penetration of Lisa's sexual organ.

The standard of review controls the outcome of this appeal. The jury must weigh and resolve conflicts in the evidence and draw reasonable inferences therefrom. *Clayton*, 235 S.W.3d at 778. When faced with a record that supports conflicting inferences, we must presume that the jury resolved any such conflicts in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326. We conclude that this record provided the jury sufficient evidence to rationally infer that appellant penetrated Lisa's sexual organ with his penis in violation of the statute. *See* Tex. Penal Code § 22.011. We resolve the sole issue on appeal in favor of the jury's verdict and the judgment.

6

**Conclusion**

We affirm the judgment of conviction.

_____

Jeff Rose, Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Affirmed

Filed:   August 28, 2013

Do Not Publish