Donald VERNON, Appellant,

v.

The STATE of Texas, Appellee.

No. 1232–91.

Court of Criminal Appeals of Texas, En Banc.

Nov. 4, 1992.

---

Bruce Isaacks, Dist. Atty., and Kathleen A. Walsh and Vicki Foster, Asst. Dist. Attys., Denton, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

BENAVIDES, Judge.

Appellant was convicted of Aggravated Sexual Assault for putting his finger into the sexual organ of his 13–year–old step-daughter. *See* V.T.C.A., Penal Code, § 22.-021(a)(1)(B)(i). Punishment was assessed at confinement in the penitentiary for life. *See* V.T.C.A., Penal Code, §§ 22.021(e), 12.-32. The Second Court of Appeals affirmed. *Vernon v. State*, 814 S.W.2d 845 (Tex. App.—Fort Worth 1991). We granted Appellant's petition for discretionary review to consider a question of statutory construction implicit in the lower court's assessment of evidentiary sufficiency and to reexamine the law of extraneous offenses as it applies to crimes of this kind.

### I.

On October 15, 1989, while his wife was away shopping, Appellant took his young step-daughter into the bathroom and undressed her. He then made her sit on a counter while he placed his hands and mouth on her vagina and encouraged her to touch him in the same way. At trial, the girl testified in response to questioning from the prosecuting attorney:

Q. Now, while you're on the counter, you said he touched your vaginal area with his hands?

A. Yes.

Q. Okay. Did he touch the inside or outside?

A. Outside.

Q. Did you ever feel his finger inside?

A. No.

Q. Did you ever feel any pain or discomfort?

A. Yes.

Q. Where did you feel that pain and discomfort?

Tom D. Jester, Jr., Denton, for appellant.

A. In my vaginal area. I'm not sure how to describe where. Just—but I could feel it, though.

Q. Could you feel his finger?

A. Yes.

Q. Can you describe in any way how it felt?

A. Well—okay. But then he started pressing and it hurt.

Q. Pressing with his finger?

A. Yes.

Statement of Facts, pp. 35–36 (objections and rulings omitted).

 In his first ground for review, Appellant maintains that the Court of Appeals erred to hold the evidence sufficient for a finding that he penetrated his step-daughter's sexual organ, since the girl testified she was touched only on the outside.

Expert testimony in the case described the female sexual organ as being comprised of an external and an internal part. The external part consists of outer vaginal lips, or labia majora, which enfold an opening to the internal organ or vaginal canal. Clinical examination of the complainant in this case disclosed a healing wound under the fold of these lips, near the vaginal entrance. The examining physician testified that this injury was "not actually inside the vagina ... [but] beneath the hymen ... on the skin that's called the introitus[.]" However, he also opined that the injury was "entirely consistent with penetration of the vagina," by which he meant that the injury was caused by an object passing "within the plane of the sex organ."

It is conceded by all that the evidence does not prove penetration of the complainant's vaginal canal. Nevertheless, the State maintains that tactile contact beneath the fold of complainant's external genitalia amounts to penetration within the meaning of the Aggravated Sexual Assault statute, since vaginal penetration is not required, but only penetration of the "female sexual organ." Evidently, the Court of Appeals agreed, since it found the evidence sufficient on these facts to prove penetration. The issue thus devolves into a question of what the term "penetration" means in con-

text of the Aggravated Sexual Assault statute.

 Words not specially defined by the Legislature are to be understood as ordinary usage allows, and jurors may thus freely read statutory language to have any meaning which is acceptable in common parlance. *Russell v. State*, 665 S.W.2d 771, 780 (Tex.Crim.App.1983), *cert. denied*, 465 U.S. 1073, 104 S.Ct. 1428, 79 L.Ed.2d 752 (1984); *Andrews v. State*, 652 S.W.2d 370, 375–376 (Tex.Crim.App.1983); *Sanders v. State*, 605 S.W.2d 612, 615 (Tex.Crim. App.1980) (panel opinion), *reh'g denied;* *King v. State*, 553 S.W.2d 105, 107 (Tex. Crim.App.1977), *cert. denied*, 434 U.S. 1088, 98 S.Ct. 1284, 55 L.Ed.2d 793. *Cf.* Art. 3.01, V.A.C.C.P. Accordingly, when determining the sufficiency of evidence to support a jury verdict, reviewing courts must not employ definitions of relevant statutory words which are different or more restrictive than the jurors themselves were legally entitled to use. *But see, e.g., Farris v. State*, 819 S.W.2d 490, 497 (Tex. Crim.App.1990) (sufficiency of the evidence to prove "deliberately" should be evaluated against a standard of which the jury is deliberately kept ignorant).

In contexts like that of the Aggravated Sexual Assault statute, "penetrate" may mean "to enter into" or "to pass through." *See, e.g., Webster's Third New International Dictionary*, p. 1670 (Merriam–Webster 1981). Thus, in common parlance, mere contact with the outside of an object does not amount to a penetration of it. But pushing aside and reaching beneath a natural fold of skin into an area of the body not usually exposed to view, even in nakedness, is a significant intrusion beyond mere external contact. Consequently, it is not ungrammatical to describe Appellant's touching of complainant in this case as a penetration, so long as contact with the injured part of her anatomy could reasonably be regarded by ordinary English speakers as more intrusive than contact with her outer vaginal lips. For this reason, we think that the phrase "penetration of the ... female sexual organ" is fairly susceptible of an understanding which in-

cludes the kind of touching proven in this case. *See Sherbert v. State*, 531 S.W.2d 636, 637 (Tex.Crim.App.1976); *Lynch v. State*, 150 Tex.Crim. 57, 199 S.W.2d 780 (1947); *Sanders v. State*, 127 Tex.Crim. 55, 75 S.W.2d 116, 117 (1934); *Mirick v. State*, 83 Tex.Crim. 388, 204 S.W. 222, 225 (1918); *Watkins v. State*, 78 Tex.Crim. 65, 180 S.W. 116, 117 (1915). *See also Martinez v. State*, 662 S.W.2d 393, 395 (Tex.App.—Corpus Christi 1983) *PDR ref'd*.

Appellant's first ground for review is overruled.

## II.

In his second ground for review, Appellant contends that the Court of Appeals erred to sustain the trial judge's receipt over objection of testimony by the complaining witness concerning several unalleged similar acts of sexual abuse committed by Appellant against her. From the complainant's testimony, it appears that these acts occurred sporadically over a number of years, perhaps beginning when she was as young as six and continuing until after the incident at issue in this case.

■ The Court of Appeals held admission of this evidence to be within the trial judge's discretion, essentially on the ground that Appellant was really engaged in some sort of continuing criminal enterprise, so that the extraneous offenses might fairly be regarded as merely "individual manifestations of the growing abuse [by Appellant] of his stepdaughter[.]" *Vernon*, 814 S.W.2d at 848. The Court thus concluded that each such example of similar criminal misconduct, however intermittent or spread over time, was actually subsumed in one extended sexual assault. Accordingly, the Court held that unalleged acts of sexual abuse were "not to be considered extraneous because they were part of the ongoing crime itself[,]" or because, in any case, they were *res gestae* of the crime, tending to illuminate the "unnatural relationship between [the complainant] and her stepfather." *Id*. at 847, 848.

■ We should make it clear from the outset that Appellant's various acts of sex-

ual misconduct, committed against his stepdaughter over a period of six years, do not in fact comprise a single offense under the laws of Texas. Rather, those who commit multiple discrete assaults against the same victim, are liable for separate prosecution and punishment for every instance of such criminal misconduct. *See Crawford v. State*, 696 S.W.2d 903, 905 (Tex.Crim.App. 1985); *Ex parte Joseph*, 558 S.W.2d 891 (Tex.Crim.App.1977); *Ex parte Thurmon*, 822 S.W.2d 170 (Tex.App.—Houston [1st] 1991); *David v. State*, 808 S.W.2d 239 (Tex. App.—Dallas 1991); *Hughes v. State*, 673 S.W.2d 654 (Tex.App.—Austin 1984). *Cf., e.g., Luna v. State*, 493 S.W.2d 854, 855 (Tex.Crim.App.1973). It is thus inaccurate to characterize Appellant's behavior toward his step-daughter during much of her young life as but a single continuing offense.

■ Nevertheless, we have recognized, at least since 1911, a special exception to the general inadmissibility of extraneous offenses for cases involving sexual abuse of a child by one standing in a parental relationship. *Battles v. State*, 63 Tex. Crim. 147, 140 S.W. 783 (1911). That exception has permitted the State to introduce evidence of similar offenses committed by the accused against the same child for the purpose of showing, among other things, the broad context in which the charged offense occurred. Subject to persistent criticism over the years, the rule was last reexamined by this Court in *Boutwell v. State*, 719 S.W.2d 164, 173 (Tex. Crim.App.1986) (opinion on rehearing), where it received only a small plurality of the votes. Since then we have not relied upon it, and *Boutwell* itself has not managed to secure the support of more than three judges. For this reason alone, we do not consider it to have significant precedential value today. *See Farris v. State*, 819 S.W.2d 490, 502, n. 3 (Tex.Crim.App. 1990). However, it has often been cited by the courts of appeals, including the Second Court of Appeals in this case.

■ Plainly, the most important guide to admissibility of extraneous misconduct in all penal contexts is now given by the Tex-

as Rules of Criminal Evidence (Rules), adopted by this Court effective September 1, 1986 and applicable at the time of Appellant's trial. Those rules were drawn to include a codification of the general prohibition against proof of extraneous offenses to show character conformity. Tex. R.Crim.Evid. 404(b). Evidence of other crimes, wrongs, or acts was to be allowed thereafter only when relevant to prove an elemental fact or an evidentiary fact of consequence to determination of the action. *Montgomery v. State*, 810 S.W.2d 372, 387–388 (Tex.Crim.App.1990) (opinion on rehearing). Historical exceptions allowing proof of extraneous offenses for other purposes were conspicuously omitted.

In *Montgomery*, we explained that the rule of *Boutwell* was based upon the widespread reluctance of people to believe "that parents or others *in loco parentis* would actually commit sexual crimes against their own children." *Id.* at 394. We recognized that successful prosecution of such crimes almost invariably depended upon the credibility of a child complainant, and that

> [w]here the accused calls that credibility into question, evidence of other identical or similar acts of sexual misconduct perpetrated by a parent against his own child may well serve to shore up testimony of the child if in logic it shows a lascivious attitude (relevant to culpable intent) and a willingness to act on it (relevant to prohibited conduct) that a jury might otherwise be loathe to attribute to a parent toward his child.

*Id.* But we insisted that admissibility under such circumstances was to be conditioned upon relevancy of the evidence to material issues in the case. It is thus clear, at least since *Montgomery*, that we no longer regard the rule of *Boutwell* to have any legal force independent of Rule 404(b).

▆ Viewed from this perspective, the court of appeals analysis in this case is mistaken because it assumes that proof of other sexual assaults by a parent upon his child may be proven under *Boutwell* and its predecessors even when credibility of the complaining witness is not impugned.

Of course, this is true under Rules 402 and 404(b) when the evidence is actually relevant to a fact of consequence in the case other than the credibility of a witness. But, the so-called "unnatural relationship" between a parent and the child he sexually abuses is not itself an elemental fact in cases of this kind. And, unless it can plausibly be argued that the repetition of "unnatural" acts actually makes an elemental fact more likely, then its repetition is not an evidentiary fact of consequence either. Here, Appellant did not cross examine any of the prosecution witnesses nor did he tender any witnesses of his own. Accordingly, it cannot fairly be said that he impeached the complainant. Because the Court of Appeals has offered no other plausible reason for thinking that proof of the prior extraneous offenses actually made any fact of consequence to the prosecution in this cause more or less likely, we are constrained to hold that its analysis was flawed.

The Court of Appeals erred, therefore, to treat multiple instances of sexual misconduct as a single crime and to rely upon the holding in *Boutwell* for disposition of Appellant's second point of error. Accordingly, its judgment is reversed and the cause remanded for an evaluation of harm under Texas Rule of Appellate Procedure 81(b)(2).

WHITE, J., concurs in the result.