Reversed and Remanded; Motion for Rehearing Granted; Opinion of July 24,
2003, Withdrawn and Substituted with Majority and Con















Reversed and
Remanded; Motion for Rehearing Granted; Opinion of July 24, 2003, Withdrawn and
Substituted with Majority and Concurring Opinions on Rehearing After Remand
filed January 29, 2004.

 

 

In The

 

Fourteenth
Court of Appeals

____________

 

NO. 14-99-00811-CR

____________

 

JOHN WATTS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

__________________________________________________

 

On Appeal from the County Criminal Court at Law No. 15

Harris County, Texas

Trial Court Cause No. 99-08037

 

__________________________________________________

 

C O N C U R R I N G   O P I N I O N   

O N   R E H E A R I N G   A F T E R  
R E M A N D

 

            I respectfully concur in the court’s
judgment, but I write separately to address the trial court’s instruction to
the jury that a ditch itself is “water in the state.”

 

            The majority concludes the trial
court’s instruction, although inappropriate, was entirely accurate.  A review of the statutory definition of
“water in the state” and an analysis of parts of the Texas Water Code using the
word “ditch” suggests otherwise. Though many ditches may fall within the
definition of “water in the state,” all ditches do not, as a matter of law,
constitute “water in the state.”  The
majority is correct in noting that the definition of “water in the state”
includes not only water, but the beds and banks of all watercourses and bodies
of surface water.  See Tex. Water Code Ann. §
26.001(5) (Vernon Supp.
2004).  However, this definition still
presupposes that water is in some way present, whether it be constant or
intermittent,[1] so
that the beds and banks still pertain to “watercourses” or “bodies of surface
water.”  Indeed, the definition on which
the majority relies describes a watercourse as any “body of water flowing . . . with bed and banks.”  Black’s
Law Dictionary 1585 (7th ed. 1999) (emphasis added).  Under this definition, the bed and banks are
part of an existing body of water but are not themselves “water.”

            Notably, although the Texas
Legislature refrained from using the word “ditch” when defining “water in the
state,” it included the word in many other sections of the Water Code.  In several of these sections, the legislature
used “watercourse” and “ditch” separately. 
See, e.g., Tex. Water Code Ann. § 36.001(8)(E)
(Vernon 2000) (defining “waste” as, among other things, “wilfully
or negligently causing, suffering, or allowing groundwater to escape into any
river, creek, natural watercourse,
depression, lake, reservoir, drain, sewer, street, highway, road, or road ditch . . .”) (emphasis added); Tex. Water Code Ann. § 56.128 (2002) (describing injury to a
drainage canal or ditch as “[a]ny person who wilfully fills up, cuts, injures, destroys, or impairs the
usefulness of any canal, drain, ditch,
watercourse . . .”) (emphasis added);
Tex. Water Code Ann. § 56.242(d)
(2002) (stating that “[t]he board may issue negotiable notes to pay any lawful
expenditure of the district, other than principal and interest on debt,
including all costs to improve or repair any existing drainage, canal, ditch, watercourse . . .”) (emphasis added).  The legislature’s separate use of the words
“watercourse” and “ditch” in these sections suggests that the latter is not
necessarily always included in the definition of the former.  See
City of San Antonio v. Boerne, 111 S.W.3d 22, 25 (Tex. 2003)
(stating that courts interpret a statute so as to give effect to every part
thereof).  If the legislature intended to
include “ditch” in the definition of “water in the state,” it could have
inserted the word quite easily as it did in these and other instances.

            For example, the legislature used
the word “ditch” in the Water Code’s definition of “point source.”  See
Tex. Water Code
Ann. § 26.001(21) (Vernon 2000).  A
“point source” is defined as “any discernible, confined and discrete
conveyance, including but not limited to any . . . ditch . . .”  Id. (Emphasis
added.)  “Point source” and “water in the
state” are later used in section 26.121 to describe unauthorized
discharges.  That section states: “Except
as authorized by the commission, no person may discharge any pollutant, sewage,
municipal waste, recreational waste, agricultural waste, or industrial waste from any point source into any water in the
state.”  Tex. Water Code Ann. § 26.121(d) (emphasis added).  The language in this section, coupled with
the foregoing definitions for these terms, suggests that a “point source”
allows a contaminant to flow into “water in the state.”  It does not support the notion that a “point
source” is itself “water in the state.” 
Because the Texas Legislature did not include “ditch” in the definition
of “water in the state,” it is logical to conclude that all ditches do not
necessarily fall under this definition, only those that otherwise come within
the language of the definition.

            Moreover, as the Court of Criminal
Appeals has noted, the trial court’s oral instruction to the jury did not
accurately describe the situation in American
Plant Food Corporation v. State.  See
Watts v. State, 99 S.W.3d 604, 614 n.26 (Tex. Crim.
App. 2003).  In American Plant Food, the Court of Criminal Appeals found that
“drainage ditch water” was a type of surface water contemplated by the
legislature under the section of the Water Code in effect at that time.  American
Plant Food Corp. v. State, 587 S.W.2d 679, 682 (Tex. Crim.
App. 1979).  Here, the trial court,
perhaps inadvertently as suggested by the Court of Criminal Appeals, omitted
the word “water” and instructed the jury that the drainage ditch itself was a
type of surface water protected under the Water Code Act.  This error was then reenforced
by the State during its closing argument when the prosecutor told the jury: “And judicial notice of the fact that another
Court, a hirer [sic] Court, the highest Court in Texas has held that drainage
ditches are entitled to the protection of this statute.  I think that’s pretty clear.”[2]  The State emphasized it again when the
prosecutor stated, “[Y]ou know that now a drainage ditch in cases can be accepted
as a water in the State.” [3] The
jury should have been free to read the undefined terms in the definition of
“water in the state” to have any meaning acceptable in common parlance.  See
Vernon v. State, 841 S.W.2d 407, 409 (Tex. Crim.
App. 1992) (stating that jurors are free to read undefined statutory terms to
have any meaning acceptable in common parlance).  But, the jury may have interpreted the trial
court’s comments as an indication that all dry ditches are “water in the state”
as a matter of law, even though the court’s charge and the Water Code do not
say this.[4]  The State’s reinforcement of this notion in
its closing argument could only have exacerbated the trial court’s
misstatement.

            Appellant
had a right to a jury verdict based on the jury’s determination of the meaning
of the undefined statutory terms, in accordance with common parlance and
understanding.  See Vernon, 841
S.W.2d at 409.  This court cannot
conclude beyond a reasonable doubt that the trial court’s inaccurate
characterization of the holding in American
Plant Food did not contribute to appellant’s conviction.  For this reason, we must find the error
harmful and reverse the trial court’s judgment.

 

                                                                        /s/        Kem Thompson Frost

                                                                                    Justice

 

Judgment rendered and
Substitute Majority and Concurring Opinions filed January 29, 2004.

 

Panel
consists of Justices Yates, Hudson, and Frost. 
(Hudson, J., majority.)

Publish
— Tex. R. App. P. 47.2(b).

 











            [1]  The hypothetical presented in the last paragraph of
footnote 8 of the majority opinion presupposes that water is in some way
present.  Therefore, the hypothetical
ditch would qualify as a “watercourse” and the hypothetical dumper could not
act with impunity.





            [2]  Emphasis added.





            [3]  Emphasis added. 





            [4]  Moreover, although every dry ditch has the
potential to become a “watercourse” and thus “water in the state,” a dry ditch
is not per se a “watercourse.”  Indeed, a freshly dug ditch that had never
seen a drop of water would not be a “watercourse.”