

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0624-20

---

### DALLAS SHANE CURLEE, Appellant

### v.

### THE STATE OF TEXAS

---

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRTEENTH COURT OF APPEALS
### JACKSON COUNTY

---

**YEARY, J., filed a dissenting opinion.**

### <u>DISSENTING OPINION</u>

The issue in this case is straightforward: Could the jury have rationally concluded that the church playground in this case was shown to be "open to the public" for purposes of a drug-free-zone special issue under Section 481.134(a)(3)(B) of the Texas Health and Safety Code? TEX. HEALTH & SAFETY CODE § 481.134(a)(3)(B). The Court holds that the evidence was legally insufficient to support the jury's answer to the special issue, largely based on observations about State's Exhibits 34 through 39, photographs of the gates to the chain link fence that surround the church playground. Majority Opinion at 3–4. These

photographs were taken more than sixteen months after the date of Appellant's offense, on the day of the trial itself, and there was no testimony that they accurately reflected whether those gates were locked or unlocked on the day of the offense.

Asked generally whether the playground was "open to the public," Jackson County Sheriff's Investigator Gary Smejkal responded that it was. Appellant did not object. Smejkal also testified that there were no locks on the gates and that he believed they were "kept unlocked at all times." Appellant did not object to this testimony either. Later, the following colloquy occurred between Smejkal and the prosecutor:

> Q. And is it your testimony that the gates to that fence, are they locked, or are they unlocked?
>
> A. I believe they are kept unlocked at all times.
>
> Q. Okay. Were they kept -- to your knowledge, were they kept unlocked in December of 2017 [the month of the offense]?
>
> A. I did not go to check to see if they were unlocked on December 7th.
>
> Q. Okay. What makes you say the gates are unlocked?
>
> A. That is through conversations with the pastor of that church.

Appellant lodged a hearsay objection to Smejkal's last answer, which was sustained, but Appellant failed to ask the trial court to instruct the jury to disregard it. Consequently, that answer should be considered in our determination of the legal sufficiency of the evidence to show whether the church playground was open to the public.[1]

---

[1] *See* George E. Dix & John M. Schmolesky, 43A TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 51:13, at 705 (3d ed. 2011) ("Suppose testimony is given, an objection is made, the objection is sustained, and no further action is taken by the trial court. * * * The traditional position seems to be that unless the defendant sought and obtained an order striking the testimony from the trial court record, the testimony—which was in fact admitted without objection—remains so admitted and may be considered for all purposes including review of evidence sufficiency."); *see also Ethington v. State,* 819 S.W.2d 854, 858 (Tex. Crim. App. 1991) ("The objection must be

There is no elaboration in the Health and Safety Code on the meaning of "open to the public." In the absence of a definition, the jury was free to assign any meaning that was available as a matter of ordinary English parlance. *See Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992) ("Words not specially defined by the Legislature are to be understood as ordinary usage allows, and jurors may thus freely read statutory language to have any meaning which is acceptable in common parlance."). One would think that any "public place" would be "open to the public," by definition. The Penal Code provides a sensible definition of "public place" which embraces "any place to which the public or a substantial group of the public has access and includes, but is not limited to, . . . the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops." TEX. PENAL CODE § 1.07(40). One would think that a church, no less than a private hospital, office building, or commercial shop, would naturally fall among the group of locations the common areas of which would constitute public places. And one would think that a playground on the grounds of a church would fall within the understanding of a "common area." Based on such an understanding, it seems to me that the jury in this case, exercising its prerogative to decide as a matter of fact whether Appellant committed his drug-possession offense within a thousand feet of a playground that was "open to the public," could rationally conclude that he did, just as a matter of ordinary English.

---

timely; that is, the defense must have objected to the evidence, if possible, before it was actually admitted. If this was not possible, the defense must have objected as soon as the objectionable nature of the evidence became apparent and must have moved to strike the evidence, that is, to have it removed from the body of evidence the jury is allowed to consider."); *Rodriguez v. State*, 903 S.W.2d 405, 410 (Tex. App.—Texarkana 1995, pet. ref'd) ("Where an objection is made and sustained, but no motion is made to strike the answer or to instruct the jury not to consider, the testimony is before the jury for whatever it is worth.").

Today the Court says otherwise, largely on the strength of State's Exhibit 38. This exhibit shows a padlock on the one gate, among four gates associated with (what Smejkal described as) the "small" chain link fence surrounding the church playground. This one padlocked gate opens out upon a public thoroughfare. The other three gates are all unlocked, by contrast, but they connect to other portions of the church grounds, rather than to a city street; thus, they do not, in the Court's view, rationally support an inference of ready public access. One suspects, however, that, but for the padlock on the one gate that opens out onto West Main Street, as reflected in State's Exhibit 38, even the Court might have been willing to declare the evidence in this case to be legally sufficient to support the jury's resolution of the drug-free-zone special issue.[2]

But the evidence was not monolithic as to whether State's Exhibit 38 accurately reflected the facts as they existed on December 7th, 2017, the day of the offense. Smejkal did *not* testify that there was a padlock on that specific gate on that specific day; he admitted that he did not check the gates that day. But he *did* testify, without objection, that the playground was open to the public on that day, and that the gates were uniformly kept unlocked at that time.[3] He also implied, before Appellant objected, that he was told as much by the pastor of the church; and though his objection to that testimony was sustained, he

---

[2] After all, even the Court acknowledges that the existence of a fence is not, alone, dispositive. *See* Majority Opinion at 11 ("Thus, a fence, in and of itself, will not decide the matter of 'open to the public.'").

[3] The Court asserts that Smejkal's testimony that the gates were uniformly kept unlocked was "plainly contradicted" by his later testimony and by photographs he took on the date of trial demonstrated that the fence was at least partially locked at that time. Majority Opinion at 20. But the fact that there was a lock on the gate depicted in State's Exhibit 38, taken on the date of trial, does not definitively refute the plain import of Smejkal's earlier testimony that, as of the date of the offense, more than sixteen months before trial, *all* of the gates were uniformly kept unlocked.

did not thereafter request an instruction to disregard it. This all amounts to at least some evidence—all competent evidence that was before the jury—to dispel the inference to be derived from State's Exhibit 38, and the jury could have rationally resolved this factual discrepancy in favor of answering the drug-free-zone special issue as it did. For the Court to take that prerogative from the jury in this case is to act as the proverbial "thirteenth juror"—something appellate courts ordinarily bend over backwards to avoid as beyond their institutional role in the criminal justice system.

I respectfully dissent.


FILED:               April 14, 2021
PUBLISH