

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00114-CR

_____

LAURA MCCREARY, Appellant

V.

THE STATE OF TEXAS

On Appeal from County Criminal Court No. 5
Denton County, Texas
Trial Court No. CR-2019-02989-E

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Opinion by Justice Birdwell

## OPINION

Appellant Laura McCreary appeals her conviction for false report to a peace officer, challenging the sufficiency of the evidence. We affirm.

## I. Background

In October 2018, Appellant and Joseph McCreary were going through a divorce; court orders regarding Joseph's visitation rights with their son were in place. On October 10, 2018, Joseph—per the visitation orders—drove to the home where Appellant and their son resided, and he parked at the end of the driveway. While Joseph sat in his vehicle, Appellant approached, opened the locked door via the keypad, and attempted to push Joseph aside. Joseph tried to push Appellant out. He called 911. While Joseph spoke to the 911 dispatcher, Appellant yelled statements that contradicted Joseph's version of the disturbance.[1]

Responding police, including Officer Samuel Brandt, made contact with Joseph and questioned him about the disturbance. Joseph gave Officer Brandt a GoPro camera that had recorded the interaction between Appellant and Joseph inside the vehicle. After viewing the GoPro video, Officer Brandt spoke with Appellant and obtained a written statement.

Joseph's statements to police were consistent with the events recorded in the video, while Appellant's statements on the video were inconsistent with what was actually occurring. Appellant's subsequent verbal and written statements to police

---

[1]The 911 call recording was not admitted into evidence at Appellant's trial.

were also inconsistent with the events shown on the video. Ultimately, because of the video, police were able to determine no family-violence assault had occurred.

After additional investigation, police issued a warrant for Appellant's arrest for the offense of false report to a peace officer. *See* Tex. Penal Code Ann. § 37.08. The case went to trial in August 2021, and a jury found Appellant guilty.

## II. Sufficiency Challenge

Appellant challenges the sufficiency of the evidence to support her conviction.

### A. Standard of Review

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622. The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04. Instead of re-evaluating the evidence's weight and credibility and substituting our judgment for the factfinder's, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Murray v.*

3

*State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Murray*, 457 S.W.3d at 448–49.

To determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by the hypothetically correct jury charge to the evidence adduced at trial. *See Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021); *see also Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("The essential elements of an offense are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Hammack*, 622 S.W.3d at 914. The law as authorized by the indictment means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the charging instrument. *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021); *see Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the

4

evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

## B. False Statement to a Peace Officer

### 1. Elements of False Statement to a Peace Officer

Under Section 37.08 of the Texas Penal Code, "[a] person commits an offense if, with intent to deceive, he knowingly makes a false statement that is material to a criminal investigation and makes the statement to . . . a peace officer." Tex. Penal Code Ann. § 37.08. Here, the State specifically alleged Appellant "intentionally and knowingly with the intent to deceive, ma[d]e a false statement, namely: that Joseph McCreary restrained or assaulted her, to a peace officer, Samuel Brandt, conducting a criminal investigation, and the said statement was material to the investigation."

Appellant contests the sufficiency of the evidence to prove only the materiality element of the offense.

### 2. "Material"

Before we turn to our analysis, we must first determine when a false statement may be "material." Section 37.08 of the Texas Penal Code does not define "material" or otherwise explain the phrase "material to a criminal investigation." *Id.*

Unless an undefined statutory term has acquired a technical meaning, we construe it according to the rules of common usage. *See* Tex. Gov't Code Ann. § 311.011; *Watkins v. State*, 619 S.W.3d 265, 272 (Tex. Crim. App. 2021); *Kirsch v. State*, 357 S.W.3d 645, 650 (Tex. Crim. App. 2012). Indeed, "[w]ords not specifically defined

5

by the Legislature are to be understood as ordinary usage allows, and jurors may thus freely read statutory language to have any meaning which is acceptable in common parlance." *Green v. State*, 476 S.W.3d 440, 447 (Tex. Crim. App. 2015) (quoting *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992)). "Accordingly, when determining the sufficiency of evidence to support a jury verdict, reviewing courts must not employ definitions of relevant statutory words which are different or more restrictive than the jurors themselves were legally entitled to use." *Vernon*, 841 S.W.2d at 409.

Webster defines "material" as "being of real importance or great consequence," "essential," or "relevant, pertinent." *Material*, Webster's Third New Int'l Dictionary (2002). Black's Law Dictionary similarly defines "material" as "[h]aving some logical connection with the consequential facts . . . essential." *Material*, Black's Law Dictionary (11th ed. 2019). Nevertheless, both Appellant and the State seek to have us apply a different, technical meaning to the term "material" as used in Section 37.08.[2]

Appellant asks us to apply a *Brady*-style analysis. Using this standard, Appellant's false statements would be material if, in light of all the evidence, there exists a reasonable probability that the outcome of the family-violence-assault investigation would have been different had the statements not been made. *See Smith v. Cain*, 565 U.S. 73, 75, 132 S. Ct. 627, 630 (2012); *Kyles v. Whitley*, 514 U.S. 419, 434,

---

[2]But neither has explained why or how its favored technical meaning developed, nor does either party cite any Texas cases applying its technical definition to Section 37.08's materiality requirement.

6

115 S. Ct. 1555, 1566 (1995). But *Brady* does not always apply to questions of "materiality." *Cf. Watkins*, 619 S.W.3d at 279 (declining to apply *Brady* analysis where the relevant statutory language does not specifically tie "materiality" to the jury's determination of guilt or punishment). Standing alone, "material" could easily be understood to mean "relevant." *See id.*

Section 37.08 further modifies the word "material" by the phrase "to a criminal investigation." Tex. Penal Code Ann. § 37.08; *cf. Watkins*, 619 S.W.3d at 279–80. According to Section 37.08's plain language, whether a statement is "material to a criminal investigation" could cover any aspect of a criminal investigation, not just the result. *Cf. Watkins*, 619 S.W.3d at 278. Nothing in the plain language of Section 37.08 indicates that the investigation's outcome, or ultimate result, determines whether a false statement is "material."

The State contends the appropriate analysis is from Section 37.04 of the Texas Penal Code, which appears in Chapter 37 immediately after the sections describing the offenses of perjury and aggravated perjury and defines a "material" statement as one that "could have affected the course or outcome of the official proceeding." Tex. Penal Code Ann. § 37.04(a). Thus, the State contends that a statement is material under Section 37.08 if it has some "legitimate tendency to prove or disprove some fact" of the type that could affect the outcome of a criminal investigation, whether it did here or not.

We are not convinced the Legislature intended that the Section 37.04 "material" definition apply to the offense described in Section 37.08. The Legislature titled Chapter 37 of the Texas Penal Code, "Perjury and Other Falsification," indicating "perjury" is distinguishable from "other falsification." *See generally* Tex. Penal Code Ann. Ch. 37. Indeed, perjury—a Class A misdemeanor—relates to statements made under oath. *See id.* § 37.02. Aggravated perjury—a third-degree felony—also relates to statements made under oath "during or in connection with an official proceeding." *Id.* § 37.03. False report to a peace officer, on the other hand, relates to statements made during a criminal investigation, not under oath during an official proceeding. *See id.* § 37.08. And false report to a peace officer is a Class B misdemeanor—a lower-level offense than both perjury and aggravated perjury. *See id.* Thus, the statutory framework of Chapter 37 does not support the State's argument that the definition of "material" in Section 37.04 is the standard by which we must measure the evidence on this element in Section 37.08. Therefore, we will not apply the Section 37.04 definition to our analysis.

In sum, both Appellant and the State ask us to define "material" in a manner "different [from] or more restrictive than the jurors themselves were legally entitled to use." *See Vernon*, 841 S.W.2d at 409. The jury could have applied any of the common dictionary definitions to interpret the meaning of "material" within Section 37.08. Accordingly, we will not apply a more restrictive definition to "material."

## C. Analysis

When Officer Brandt first spoke to Appellant, she stated Joseph had invited her into the vehicle and then pulled her and threw her into the vehicle. But the officer had reason to question the veracity of this statement. When viewing the GoPro video before questioning her, Officer Brandt and his fellow officers overheard Appellant give a real-time account of the encounter with Joseph to the 911 operator who initiated the investigation, and the video images utterly belied her account. For example, while Joseph was on the 911 call, Appellant stated that he was pulling her into the vehicle. But the video shows Appellant opening the driver's side door and pulling herself into the vehicle. Similarly, in Appellant's voluntary written statement, she alleged Joseph "had his elbow shoved into [her] chest," and he "was preventing [her] from getting out" of the vehicle. But the video does not show Joseph shoving his elbow into Appellant's chest or preventing her from exiting the vehicle.

Appellant asserts her false statements had no effect on the criminal investigation because—after viewing the video—Officer Brandt did not believe her statements were true; thus, the statements did not change the outcome of his investigation. Although Officer Brandt testified that after viewing the video, he did not believe Joseph had assaulted or restrained Appellant, his testimony does not conclusively refute the materiality element. As we have already stated, the jury was not limited to considering only evidence of the investigation's outcome in reaching a materiality determination.

9

It is well established that the factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04. The jury watched the video from Officer Brandt's body camera that recorded his encounter with Appellant. Officer Brandt testified at trial that even after he viewed the GoPro video, he was required to complete the initial family-violence-assault investigation. To complete that investigation, Officer Brandt went to speak with Appellant. According to Officer Brandt, it is normal to speak to both parties involved in a disturbance to obtain each person's "side of the story"; obtaining both sides of the story is material to the investigation. And Officer Brandt testified that Appellant provided a false report in giving her side of the story. Investigator Brice Hicks, who investigated whether Appellant should be charged for making a false statement, also testified to the materiality of Appellant's false statements to Officer Brandt. Specifically, Investigator Hicks testified that family-violence assault is a very serious charge, and without the GoPro video, Joseph likely would have gone to jail based on Appellant's allegations against him.

The jury was free to apply ordinary usage and common meaning to interpret the materiality of Appellant's false statements. Specifically, the jury could have determined that Appellant—the alleged family-violence-assault victim—made statements that were an essential component of the investigation—getting the full story of what happened—and that were therefore relevant even though they did not

10

affect the ultimate outcome of the investigation. Viewed in the light most favorable to the verdict, the evidence is sufficient to support Appellant's conviction.

## III. Conclusion

We affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Publish

Delivered: July 21, 2022