

# In the Court of Criminal Appeals of Texas

No. PD-0436-22

IJAH IWASEY BALTIMORE, *Appellant*

v.

THE STATE OF TEXAS

On State's Petition for Discretionary Review
From the Tenth Court of Appeals
McLennan County

YEARY, J., filed a dissenting opinion.

For the sake of focus, I will start by reminding the reader that the court of appeals at first decided that the evidence in this case was legally *sufficient* to show that the place where Appellant possessed a weapon was a "premises licensed or issued a permit by this state for the sale of

alcoholic beverages[,]" as required by the then-applicable version of Texas Penal Code, Section 46.02(c). Acts 2015, 84th Leg., ch. 437, p. 1719, eff. Jan. 1, 2016 (repealed 2021); *Baltimore v. State*, 608 S.W.3d 864, 865 (Tex. App.—Waco 2020). We granted review of that opinion and then remanded for the court of appeals to reconsider its opinion in light of our decision in *Curlee v. State*, 620 S.W.3d 767 (Tex. Crim. App. 2021). *Baltimore v. State*, 631 S.W.3d 727, 728 (Tex. Crim. App. 2021). The court of appeals then reversed Appellant's conviction, finding the evidence legally *insufficient* to show that the place where he possessed a weapon was a "premises licensed or issued a permit by this state for the sale of alcoholic beverages." *Baltimore v. State*, No. 10-19-00196-CR, 2022 WL 2977480 at *3 (Tex. App.—Waco July 27, 2022) (mem. op., not designated for publication). And now we have granted the State's petition for discretionary review which asks whether "sworn, unchallenged testimony on a material issue ha[s] probative value[.]"

The State's question is clearly a response to the court of appeals' most recent decision finding the evidence to be legally *insufficient* to show that the place where he possessed the weapon was a "premises licensed or issued a permit by this state for the sale of alcoholic beverages." And the Court now answers that frankly easy question on the first page of its opinion: "Yes." Majority Opinion at 1. But the question we are apparently still wrestling with is how a court should measure the sufficiency of the evidence in this and similar cases. And that is why the Court goes on today, for another thirty-four pages, explaining why it concludes that the evidence is legally insufficient.

## I. THE COURT'S MISGUIDED PERPETUATION OF ITS ERRONEOUS DECISION IN *CURLEE V. STATE*.

Presiding Judge Keller and I dissented to this Court's decision to remand for the court of appeals to reconsider its decision on legal sufficiency in light of the Court's opinion in *Curlee*. For my part, although I did not elaborate on it at the time, I did so because of my concern that the remand in light of *Curlee* would further entrench that erroneous precedent and cause its corrosive influence on our jurisprudence to expand. I wrote a dissenting opinion in *Curlee* to explain why I believed the Court's decision in that case was erroneous. 620 S.W.3d at 795–97 (Yeary, J., dissenting).

Curlee had been found to have been in "possession of a controlled substance within 1,000 feet of a drug-free zone, namely, a [church] playground." *Curlee*, 620 S.W.3d at 775. The issue in that case was whether the evidence was legally sufficient to prove that the church playground had been "open to the public" for purposes of the drug-free-zone special issue authorized by Section 481.134(a)(3)(B) of the Texas Health and Safety Code. TEX. HEALTH & SAFETY CODE § 481.134(a)(3)(B). The words "open to the public" had been left undefined in the statute. *Curlee*, 620 S.W.3d at 796 (Yeary, J., dissenting).

The church playground in *Curlee* was shown to be surrounded by a see-through chain-link fence with four different gates, only one of which had a lock on it, and three were unlocked. *Curlee*, 620 S.W.3d at 776–77. A local sheriff's investigator named Smejkal, who was able to access the playground on his own through an unlocked gate, testified at Curlee's trial and confirmed that the playground was indeed "open to the public." *Id.* at 784. The Court found that, in the absence of an

explanation for the basis of Smejkal's opinion, his testimony was "factually unsupported." *Id.* at 785 ("Absent the bases upon which Smejkal's opinion was formed, his opinion that the playground was open to the public was a factually unsupported inference or presumption."). The Court then concluded that the evidence in that case—including the fact that the fence around the playground was not completely secure, Smejkal's testimony that the playground was open to the public, the fact that the playground was on the grounds of a church, and the fact that the playground could be seen through the chain link fence—was "insufficient to show that the playground was 'open to the public.'" *Id.* at 788.

The Court's opinion in *Curlee* was, to my way of thinking, at least difficult to understand. The statute at issue there required the State to prove that the church playground was "open to the public." TEX. HEALTH & SAFETY CODE § 481.134(a)(3)(B). And there was testimony at the trial from a local sheriff's investigator that he was able to access the playground and that the playground was "open to the public." There was also evidence that three of the four gates on the chain link fence surrounding the playground were unlocked. And yet the Court still required more, even though the words "open to the public" were not defined to have a limited meaning in the statute.

*Curlee* might have made more sense had the words "open to the public" in Section 481.134(a)(3)(B) of the Health and Safety Code been subject to a specific, limited statutory definition. But this Court has long held that, in the absence of such a definition, a jury is free to assign any meaning to undefined statutory language that is available as a matter

of ordinary English parlance. *See Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992) ("Words not specially defined by the Legislature are to be understood as ordinary usage allows, and jurors may thus freely read statutory language to have any meaning which is acceptable in common parlance."). Perhaps, if there had been a statutory definition of "open to the public," the Court might have been correct to expect some additional testimony about why the church playground was not only "open to the public" as a matter of the common understanding of that phrase but also "open to the public" in the more limited sense required by the hypothetical statutory definition. But there was no such limiting definition in the statute.

The Court might also have been excused for requiring more if the phrase "open to the public" had taken on some kind of "technical meaning" or was a "term of art." When a statutory term has taken on a technical meaning or is a term of art, the Court has said that it will understand the term to have its technical meaning or the meaning it has as a term of art. *See State v. Hardin*, 664 S.W.3d 867, 873 (Tex. Crim. App. 2022) ("When a particular term is not legislatively defined but has acquired a *technical meaning*, we construe that term in its technical sense.") (emphasis added). But the Court did not consider that possibility there.

The statutory phrase "open to the public" at issue in *Curlee* should have been treated by the Court as having its commonly understood meaning. The jury there did not act irrationally to conclude, based on Smejkal's testimony and the other circumstances present in that case, that the church playground there fell within the otherwise undefined

common meaning of the phrase "open to the public." The Court just disagreed with the jury's conclusion that the playground was "open to the public." And, in disagreeing, in my view, the Court succumbed to the temptation, not to simply ask whether the jury's different decision was rational, but to impose its own will on the outcome, as would the proverbial thirteenth juror. *Edwards v. State*, 666 S.W.3d 571, 574 (Tex. Crim. App. 2023) ("When considering a claim of evidentiary insufficiency, a reviewing court does not sit as the thirteenth juror and may not substitute its judgment for that of the factfinder by reevaluating the weight and credibility of the evidence.").

The Court's decision in *Curlee* was wrong. *See* 620 S.W.3d at 795–97 (Yeary, J., dissenting). I would not have asked the court of appeals to reconsider its opinion in light of *Curlee*. But that does not mean I would have left the court of appeals' decision alone in this case either. Instead, I would have simply considered whether the court of appeals had correctly reviewed the legal sufficiency of the evidence in this case, in the first place.

## II. CORRUPTION OF THE STANDARD FOR LEGAL SUFFICIENCY

There is still a more troubling aspect to the Court's decision in this case. As the Court acknowledges, the trial court, in its charge to the jury, defined "premises" according to the definition of that term found in Section 11.49(a) of the Texas Alcoholic Beverage Code. TEX. ALCO. BEV. CODE § 11.49(a). The court of appeals similarly assumed without deciding, in its first opinion, that the definition from that code was proper. *Baltimore*, 608 S.W.3d at 867 n.2. And the Court in its opinion today says that, in reviewing the sufficiency of the evidence in this case,

it "assume[s] without deciding that [the] definition [of 'premises' found in Section 11.49(a) of the Alcoholic Beverage Code] is the appropriate definition to be applied to the statutory enhancement under Sec. 46.02(c) as it existed at the time of the offense." Majority Opinion at 23. But that is not how we measure legal sufficiency of the evidence.

When conducting a legal sufficiency analysis, we do not do so based upon potentially incorrect assumptions about the meaning of the law. This Court's precedents explain that courts are supposed to measure the sufficiency of evidence presented against the "'hypothetically correct jury charge for the case.'" *Hernandez v. State*, 556 S.W.3d 308, 312 (Tex. Crim. App. 2017) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "A hypothetically correct jury charge is 'one that *accurately sets out the law*, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240) (emphasis added). The Court acknowledges this in its opinion. Majority Opinion at 19. But the Court fails to begin its analysis by determining what the hypothetically correct jury charge would say in this case. To do that, the Court would first have to actually construe the statutory language in question.

Perhaps the Court does not want to do that. After all, the court of appeals has yet to construe the meaning of the applicable Penal Code phrase "premises licensed or issued a permit by this state for the sale of alcoholic beverages." Acts 2015, 84th Leg., ch. 437, p. 1719, eff. Jan. 1, 2016 (repealed 2021). If that is the issue holding the Court back from

conducting a proper legal sufficiency review, I understand. Ordinarily, on discretionary review, this Court addresses only the "decisions" of the courts of appeals. *See* TEX. R. APP. P. 66.1, 68.1 (Court of Criminal Appeals "may review a court of appeals' decision in a criminal case" either on its own initiative or on petition by any party); *Gilley v. State*, 418 S.W.3d 114, 119 (Tex. Crim. App. 2014) ("As a general proposition, this Court will review only the 'decisions' of the courts of appeals.").

But I would not simply undertake a modified legal sufficiency of the evidence review based on a construction of the statute that has only been *assumed* to be the correct construction. That can only lead to further corruption of our jurisprudence. Instead, I would remand to the court of appeals, as we should have done in the first instance, for that court to reconsider both of its former opinions, but this time to begin by properly construing the meaning of the phrase "premises licensed or issued a permit by this state for the sale of alcoholic beverages." Acts 2015, 84th Leg., ch. 437, p. 1719, eff. Jan. 1, 2016 (repealed 2021).

## III. CONCLUSION

In my view the Court errs to perpetuate its erroneous and misguided opinion in *Curlee*. It also perpetrates a corruption of our standard of review for legal sufficiency of the evidence by measuring the evidence in this case only against an *assumed* proper understanding of the applicable law. I would remand for the court of appeals to properly construe the law in the first instance. Because the Court does not, I respectfully dissent.

**FILED:**                             May 22, 2024
**PUBLISH**