

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00216-CR

_____

JOSE CARLOS VELAZQUEZGONZALEZ, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 213th District Court
Tarrant County, Texas
Trial Court No. 1719081

---

Before Womack, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

A jury convicted Appellant Jose Carlos VelazquezGonzalez of the offenses of aggravated sexual assault and indecency with a child by contact. *See* Tex. Penal Code Ann. §§ 22.021(a), 21.11(a). The jury assessed his punishment at twenty years' confinement for the aggravated sexual assault offense and four years' confinement for the indecency offense. The trial court sentenced VelazquezGonzalez accordingly and ordered the sentences to run consecutively. In his sole issue, VelazquezGonzalez challenges the sufficiency of the evidence to support his conviction for aggravated sexual assault.[1] We affirm.

## I. BACKGROUND

In 2019, VelazquezGonzalez lived in a house with his girlfriend (Mother), her children, and her brother. Mother's daughter, Veronica,[2] has cerebral palsy and was diagnosed as intellectually disabled. Veronica was in special education classes while in school where she learned basic life skills.

On November 17, 2019, Veronica was fifteen years old, and she and her younger sister (Sister), were at home with VelazquezGonzalez. Both of the girls had lice, and VelazquezGonzalez was treating their hair in the bedroom he shared with

---

[1]VelazquezGonzalez does not challenge the sufficiency of the evidence to support his conviction for the indecency with a child by contact offense.

[2]To protect the child's identity, we use an alias to refer to her. *See* Tex. R. App. P. 9.10(a)(3).

Mother. To access that bedroom from inside the house, one must pass through the bedroom Veronica and Sister shared. The house had two bathrooms—one in the hallway and one in VelazquezGonzalez and Mother's bedroom.

At trial, Sister testified that VelazquezGonzalez treated her hair first, and then she left to go take a shower in the hallway bathroom. After realizing she had forgotten her towel, Sister went back to get it, but the door to her bedroom was locked. Sister testified that she had not locked the door and that it was odd that the door was locked. She was able to get the door unlocked using a knife from the kitchen. After she got into her bedroom, Sister discovered that the door to VelazquezGonzalez and Mother's bedroom was also locked. Sister testified that she had a bad feeling because that door was never locked. She got down on the floor and looked under the door into VelazquezGonzalez and Mother's bedroom.[3] Sister testified that she saw Veronica on the bed with her pants down around her feet, and VelazquezGonzalez was close to her. Sister called Mother and told her what she had seen. Sister said she looked under the door again, and VelazquezGonzalez was on top of Veronica. Sister went to the hallway bathroom to wait for Mother. Veronica later came into the bathroom with Sister, and Sister described Veronica as scared, shaking, and crying. They both waited in the bathroom until Mother arrived.

---

[3]The record shows that the space under the bottom of the door was three quarters of an inch.

Mother testified that she was at work on November 17, 2019, and VelazquezGonzalez was at home with Veronica and Sister. While at work, she received a call from Sister telling her to come home because Veronica was "on the bed and her clothes are off and the door is locked." Mother said she dropped everything and left work. While she was driving home, Mother called VelazquezGonzalez and asked him "[W]hat did you do to my daughter?" VelazquezGonzalez responded that he did not do anything. When she arrived home, Mother found Veronica and Sister in the bathroom.

Mother testified that Veronica told her that VelazquezGonzalez threw her onto the bed, took off her pants, and touched her breasts. Mother called 911.

Veronica was eighteen years old at trial. She testified that when VelazquezGonzalez was treating her hair for lice, he told her "to go to the bed." She said that VelazquezGonzalez took her pants off so that they were around her legs. Veronica testified that VelazquezGonzalez touched her "private part" which she later clarified as her "vagina." According to Veronica, she pushed VelazquezGonzalez off of her and went with Sister in the bathroom, where she stayed until Mother got home.

The Fort Worth Police Department responded to the call, and Mother gave them a description of VelazquezGonzalez. Police officers located VelazquezGonzalez a few blocks from the home, and he was placed under arrest. Police officers later obtained a DNA sample from VelazquezGonzalez.

Pamela Simmons, a nurse with Cook Children's Medical Center, testified that she conducted a sexual assault exam on Veronica. Simmons stated that when she was obtaining Veronica's patient history, Veronica told her that VelazquezGonzalez put her in the bed and started taking off her clothes. Veronica then said that VelazquezGonzalez touched her "boobs" and "middle part" and that "[i]t hurt." Simmons then used anatomical diagrams to clarify Veronica's statements because of her developmental delay. Simmons asked Veronica to circle "boobs" and "middle part" on the diagram. The jury viewed the diagram with the circles Veronica drew on it.

Simmons asked Veronica if VelazquezGonzalez's finger touched any part of her body, and Vernoica responded that it did. Simmons then asked, "If you pretend that this is the part, whatever they called it, she called it 'down there.' If this is the labia, was that touched on top only, in between, or inside"? Veronica responded "inside," and she said "hurts." Simmons also testified that she took swabs from Veronica's breasts, vagina, inner labia, and outer labia.

Kira Monthie, a senior forensic biologist at the Tarrant County Medical Examiner's Office, testified that she analyzed Veronica's sexual assault kit, which included the swabs taken from Veronica, as well as the buccal swabs taken as a DNA sample from VelazquezGonzalez. Monthie determined that the "major DNA profile obtained from the breast swab [was] the same as the DNA profile obtained from [VelazquezGonzalez]." Monthie tested the swab was taken from Veronica's outer

labia, and she was able to determine that male DNA was present, but she was not able to obtain a profile for the male DNA.

## II. SUFFICIENCY OF THE EVIDENCE

In our evidentiary-sufficiency review, we view all evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 2787 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 593, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences

6

in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

## III.  DISCUSSION

In his sole issue, VelazquezGonzalez argues that the evidence is insufficient to support his conviction for aggravated sexual assault.  A person commits the offense of aggravated sexual assault if he:

> (A) intentionally or knowingly:
>
>> (i) causes the penetration of the anus or sexual organ of another person by any means, without that person's consent;
>
> . . . .
>
> (B) regardless of whether the person knows the age of the child at the time of the offense, intentionally or knowingly:
>
>> (i) causes the penetration of the anus or sexual organ of the child by any means;
>
> . . . .
>
> (2) if:
>
> . . . .
>
> (C) the victim is an elderly individual or a disabled individual.

Tex. Penal Code Ann. § 22.021(a)(1)(i) (B)(i), (a)(2)(C).

VelazquezGonzalez specifically argues that the evidence is insufficient to prove "penetration" of Veronica's sexual organ as alleged in the indictment.  Penetration is not defined in the Texas Penal Code.  Words not defined by the Legislature are to be

7

understood as ordinary usage allows, and jurors may freely read statutory language to have any meaning which is acceptable in common parlance. *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992). Accordingly, when determining the sufficiency of evidence to support a jury verdict, reviewing courts must not employ definitions of relevant statutory words that are different or more restrictive than the jurors were legally entitled to use. *Id.*

In *Vernon*, the complainant testified that the defendant touched the "outside" of her vagina with his hand and that she did not feel his finger "inside." *Id.* at 408. The complainant explained that she felt pain and discomfort in her "vaginal area" because she could feel the defendant's finger as "he started pressing and it hurt." *Id.*

In determining whether the evidence was sufficient to prove penetration, the court reasoned:

> In contexts like that of the Aggravated Sexual Assault statute, 'penetrate' may mean 'to enter into' or 'to pass through.' *See, e.g., Webster's Third New International Dictionary,* p. 1670 (Merriam–Webster 1981). Thus, in common parlance, mere contact with the outside of an object does not amount to a penetration of it. But pushing aside and reaching beneath a natural fold of skin into an area of the body not usually exposed to view, even in nakedness, is a significant intrusion beyond mere external contact. Consequently, it is not ungrammatical to describe Appellant's touching of complainant in this case as a penetration, so long as contact with the injured part of her anatomy could reasonably be regarded by ordinary English speakers as more intrusive than contact with her outer vaginal lips. For this reason, we think that the phrase 'penetration of the . . . female sexual organ' is fairly susceptible of an understanding which includes the kind of touching proven in this case.

*Id.* at 409–10.

8

VelazquezGonzalez cites the discussion on penetration from *Vernon*, but he contends that *Manzanarez v. State* is also relevant to our analysis of the sufficiency of the evidence to prove penetration. No. 05-22-00671-CR, 2024 WL 260481 at *2 (Tex. App.—Dallas Jan. 24, 2024, no pet) (mem. op., not designated for publication). In *Manzanarez*, the complainant testified that the defendant touched the "line in the middle" of her vagina with his fingers. *Id.* The forensic examiner testified that the complainant told her that the defendant's finger was "smooshing" the "thing in the middle." *Id.* The court held that the evidence was sufficient to prove penetration. *Id.* at *3.

In reaching its conclusion, the court in *Manzanarez* distinguished *Woodall v. State*, 376 S.W.3d 134 (Tex. App.—Texarkana 2012, no pet.), and *Prestiano v. State*, 581 S.W.3d 935 (Tex. App.—Houston [1st Dist.] 2019, pet ref'd), that Manzanarez had cited as authority. *Id.* In *Woodall*, the court held there was insufficient evidence of penetration because the complainant denied that the defendant touched the "inside of her private." 376 S.W.3d at 139. The defendant admitted that he touched the complainant's genitalia outside of her underwear, but there was no evidence that his fingers went inside the child's labia. *Id.* In *Prestiano*, the complainant testified that the defendant's sexual organ only touched her mouth "a little bit." 581 S.W.3d at 941. The court held that a fact-finder could do no more than speculate as to whether penetration or mere contact occurred. *Id.* at 942.

VelazquezGonzalez argues that, as in *Woodall* and *Prestiano*, the evidence in this case is insufficient to prove penetration. He contends that Veronica's testimony was insufficient to prove penetration because she only testified that VelazquezGonzalez touched her vagina with his hand. When asked if VelazquezGonzalez touched her vagina "on the top part, the sides, the middle, or something different," Veronica responded "The middle." Unlike *Woodall*, Veronica did not deny that VelazquezGonzalez touched the "inside of her private." 376 S.W.3d at 139. In addition, Veronica's testimony was not the only evidence relating to penetration. The State also offered the testimony of Simmons.

Simmons testified that she asked Veronica, "If you pretend that this is the part, whatever they called it, she called it 'down there.' If this is the labia, was that touched on top only, in between, or inside." Veronica responded "inside," and she said "hurts." Simmons also stated that Veronica said VelazquezGonzalez's finger went inside and that it hurt. Simmons's testimony provided evidence of "a significant intrusion beyond mere external contact." *Vernon*, 841 S.W.2d at 409. In contrast to *Woodall* and *Prestiano*, Simmons's testimony provided evidence that VelazquezGonzalez's finger went inside of Veronica's sexual organ so that the jury did not have to speculate whether penetration or mere contact occurred. *See Woodall*, 376 S.W.3d at 139; *Prestiano*, 581 S.W.3d at 941. We agree with the reasoning in *Vernon* that it is not ungrammatical to describe VelazquezGonzalez's touching of

10

Veronica as penetration because the touching could reasonably be regarded as more intrusive than contact with her outer vaginal lips. *Vernon,* 841 S.W.2d at 409.

VelazquezGonzalez also argues that because the record does not show what object Simmons used when she asked Veronica to "pretend that this part" was what Veronica referred to as "down there," there was no assurance that Veronica indicated penetration of her sexual organ by his finger. The jury was able to view Simmons as she testified and described Veronica's statements. We give deference to their responsibility to weigh the evidence and draw reasonable conclusions. *See Harrell,* 620 S.W.3d at 914. Simmons clearly testified that Veronica told her VelazquezGonzalez touched her "inside" with his finger and that it hurt. The jury is the sole judge of witness's credibility and the weight to be given testimony. *See Martin,* 635 S.W.3d at 679.

VelasquezGonzalez further argues that the evidence is insufficient because Veronica's sexual assault exam did not reveal any injuries, DNA evidence did not show his DNA was present on Veronica's sexual organ, and Veronica's forensic interview was not admitted into evidence. "But the question is not what evidence there isn't, it's what evidence there is." *Acosta v. State*, 429 S.W.3d 621, 630 (Tex. Crim. App. 2014). Simmons's testimony provided evidence of penetration.

We hold that based on the record, a rational trier of fact could have found beyond a reasonable doubt that VelazquezGonzalez penetrated Veronica's sexual

11

organ.  *See Manzanarez*, 2024 WL 260481 at *3.  We overrule VelazquezGonzalez's sole issue on appeal.

## IV.  CONCLUSION

Having overruled VelazquezGonzalez's sole issue, we affirm the trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  August 1, 2024