

# NUMBER 13-24-00228-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JUAN CARLOS CIRILO
A/K/A JUAN CIRILO,                                                        **Appellant,**

**v.**

THE STATE OF TEXAS,                                                      **Appellee.**

## ON APPEAL FROM THE 357TH DISTRICT COURT
## OF CAMERON COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Cron**
**Memorandum Opinion by Chief Justice Tijerina**

Appellant Juan Carlos Cirilo a/k/a Juan Cirilo was convicted of two counts of the first-degree felony offense of aggravated sexual assault of a child, Mandy, and sentenced to concurrent terms of twenty years' confinement. [1] *See* TEX. PENAL CODE ANN.

---

[1] We refer to the complainant and her family by pseudonyms to protect her identity. *See* TEX.

§ 22.021(a)(2)(B). By what we construe as two issues, appellant contends the evidence is insufficient to support either conviction. We affirm.

## I.    STANDARD OF REVIEW AND APPLICABLE LAW

In a sufficiency review, we consider all the evidence in the light most favorable to the verdict and determine whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt based on the evidence and reasonable inferences from that evidence. *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.). Sufficient evidence exists if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). The fact finder is the exclusive judge of the facts, the credibility of witnesses, and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899.

We measure the sufficiency of the evidence in reference to the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal*, 286 S.W.3d at 327 (quoting *Malik*, 953 S.W.2d

---

CONST. art. I, § 30(a)(1) (granting victims of a crime "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal judicial process"); c*f.* TEX. R. APP. P. 9.8 (requiring identification of children by means of initials or fictitious names in parental rights and juvenile court cases).

at 240). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements "as modified by the [indictment]." *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000). Appellant committed the offense of aggravated sexual assault of a child as charged in Count 1 if appellant intentionally or knowingly caused Mandy's mouth to contact his sexual organ, and as charged in Count 2, if he intentionally or knowingly caused the penetration of Mandy's sexual organ who was a child younger than fourteen years of age by his finger. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B), (a)(2)(B).

## II.    IDENTITY

By his first issue, appellant contends the evidence presented at trial is insufficient to establish his "identity in light of his son's crimes against" Mandy. Specifically, appellant argues: "Both Appellant and his son, Juan Carlos Cirilo Jr., share the same name and lived in the same household during the relevant period. Witnesses identified the perpetrator only as 'Carlos,' failing to distinguish between the two."

### A.    Pertinent Facts Regarding Appellant's Identity

At trial, during its opening statement, the State explained to the jury that appellant is Mandy's stepfather and that appellant and appellant's son, Juan Cirilo Jr. (J.C.) had lived in Mandy's home. During his opening statement, appellant's trial counsel acknowledged that appellant is Mandy's former stepfather and that J.C. pleaded guilty to sexually abusing Mandy.

Victor Diaz, former patrol officer with the Primera Police Department, testified that Mandy's mother, Y.R., reported that both appellant and his son had sexually assaulted

3

Mandy. Sergeant Angelica Sandoval with the Primera Police Department stated that she investigated Mandy's allegations that Y.R.'s "*ex-husband* had touched her" on "her private parts." (Emphasis added). Sergeant Sandoval stated, "[Mandy] made the outcry to [Y.R.] that the *ex-husband* had put his private part to her mouth. Then, touching to the privates and also that his mouth had touched her privates." (Emphasis added). Sergeant Sandoval clarified that she "just knew" appellant as "Cirilo" and knew his son as "Junior," who she stated was also referred to as "J.C." in the report. When asked how many incidents involved J.C., Sergeant Sandoval replied, "J.C., which at the time was a younger child himself, it was a one-time, one event." The State asked, "Okay. And what about with the Defendant Juan Carlos Cirilo?" Sergeant Sandoval said, "It was unknown the amount of times. She could not recall." The State then asked, "Where did these assaults allegedly take place, the assault by Juan Carlos Cirilo, Sr., *the defendant*, where did those take place?" (Emphasis added). Sergeant Sandoval responded, "In Cameron County, [Texas,] my city, Primera, [Texas]."

Sergeant Sandoval testified that Mandy referred to appellant as her mother's ex-husband and did not call him her "stepdad." Sergeant Sandoval continued, "She said, 'My *mother's ex-husband* put his private in my mouth. He touched my private parts with [h]is hands.'" Sergeant Sandoval clarified that Mandy claimed "[t]hat he put his penis in her mouth" and "touched her private parts [vagina] with the hand." The State asked Sergeant Sandoval if she contacted "the defendant during the course of [her] investigation." Sergeant Sandoval replied that she had, and she "informed him of these allegations against him and . . . provided him [with the opportunity] to make a statement." According

4

to Sergeant Sandoval, she told appellant he was accused of sexual assault of a child and told him "[t]he details of his ex-wife and the child." Sergeant Sandoval testified that when Mandy made the allegations, appellant was no longer living in her home and that he had moved out when Mandy was thirteen years old.

Y.R., identified appellant as "Carlos" who she had previously married and then divorced. Y.R. discussed her relationship with appellant extensively during her testimony, including why she filed for divorce in 2021. Y.R. stated that they were in court because "my daughter came out to me that he was [sexually] messing with her." The State said, "And when you say 'he,' who are you referring to?" Y.R. replied, "Carlos." Y.R. called appellant "Carlos" throughout her testimony.

Y.R. stated that when Mandy was fourteen years old, Mandy told her that "J.C. had touched her one time." The State asked, "And who is 'J.C.'" Y.R. responded, "Carlos's son." Y.R. referred to appellant's son as "J.C." throughout her testimony. Y.R. asked Mandy if there was anything else; Mandy said, "No, not with J.C." Y.R. said that her other daughter interjected, "'You need to tell her about Carlos.'" Y.R. testified she asked Mandy about "Carlos", and Mandy said, "that he put his thing in her mouth and then he put . . . her thing in his mouth." Y.R. clarified that Mandy claimed "Carlos" put his penis in her mouth and he put his mouth on her vagina. Y.R. called the police.

During cross-examination, appellant's trial counsel asked, "Now, you're aware that Juan Carlos Cirilo, Jr., was also accused of doing something to [Mandy], right?" Y.R. replied, "Yes." Appellant's trial counsel said, "And would it have been around the same time as [appellant] is allegedly charged of the same thing?" Y.R. responded, "From what

5

she said, yes." Appellant's trial counsel asked if Mandy's sister knew of the allegations against appellant "or did she just know about Juan Carlos Cirilo, Jr.?" Y.R. stated, "From what I understand, [Mandy's sister] knew about both." On re-direct, the State asked if Y.R. was still married to appellant when Mandy made her outcry, and she said, "Yes."

Peggy Rosa, Y.R.'s mother, testified that Mandy became "troubled" and "wasn't herself anymore." The State asked, "And when she wasn't herself anymore, who-all was living at the house" with Mandy. Peggy replied, "Carlos. That's when it all started." The State said, "You said 'Carlos,' who are you speaking of?" Peggy pointed at appellant and stated, "Him right there." The State asked, "Who is J.C.?" Peggy replied, "His son." Appellant's trial counsel objected to the State's further questions regarding appellant's son. The trial court then said, "This is not a case about J.C. It's not a case about that. It's [a] case against Mr. Juan Carlos Cirilo. J.C. is not a defendant in this case" and "That's not the defendant in this case. He's not—that's the defendant right there."

J.C. testified that he is twenty-two years old and that he lived with appellant, his father, and Y.R. for approximately one year when he was in ninth or tenth grade. J.C. stated that he pleaded guilty to attempted assault of Mandy, but he did not recall what he had done because he was doing illegal drugs when the offense occurred.

Mandy's sister, K.M., testified that they were in court "[b]ecause of what happened with Carlos." The State asked if K.M. recognized "Carlos," and she replied, "He's in a red shirt." The record reflects that K.M. identified appellant as "Carlos." K.M. testified that Mandy told her what appellant had done to her, and K.M. told Mandy to tell their mother. K.M. said that Mandy told her "other stuff about J.C.," who she identified as her former

6

stepbrother. During cross-examination of K.M., appellant's trial counsel referred to appellant as "Carlos" and his son as "J.C."

Mandy testified that she was in court "[b]ecause he touched me." The State asked Mandy to state who she meant by "he." Mandy said, "Carlos," and described him as her former "stepdad" who was married to Y.R. The State asked Mandy to identify "Carlos," and the record reflects that she identified appellant. Mandy testified that she called appellant "dad" and considered him her father. Mandy stated that she recalled "laying down in the bed and he was just touching [her] and then . . . he licked [her] down there and [she] was staring at the ceiling." The State asked Mandy to discuss what "Carlos" did to her "one at a time." Mandy remembered that she and appellant were in her mother's bedroom, and "he told [her] that [she] needed to touch [herself] or touch him and he said that for [her] to put his thing in [her] mouth and 'suck it like a lollipop.'" Mandy stated that she "had put it in [her] mouth and . . . was scared." Mandy said that on another occasion, while in her mother's room, "He would just touch me or lick me down there." Mandy did not know how often appellant did this to her but said, "I know it was more than three times." Mandy clarified on redirect examination that appellant touched her clitoris while "moving his fingers around." Mandy testified that although appellant sexually abused her, she sent him messages stating that she loved him when he left the home. The State asked, "Did Juan Carlos Cirilo sexual[ly] abuse you?" Mandy said, "Yes, he did" and denied that there was any confusion about "who did what to" her.

The State asked Mandy if she had accused someone else of sexual abuse, and Mandy said she had accused "[h]is son." The State asked, "And when you say 'his son,'

7

who are you referring to?" Mandy replied, "J.C. . . . My stepbrother." The State asked, "What did J.C. do to you?" Mandy said, "He had touched me too." Mandy testified that the incident with J.C. only occurred one time. Mandy testified that the incident with J.C. had "[n]othing to do with" the incidents with appellant. Mandy stated that she told appellant what J.C. had done, and appellant told her he would speak with J.C.

Finally, appellant presented the testimony of several witness who all referred to appellant as "Carlos." Appellant testified that he "didn't do none of this." Appellant's trial counsel asked if what Mandy alleged occurred, and appellant said, "No, none of those. Those are all false accusations." On cross-examination, the State asked, "And you're telling me that everything that's coming out of her mouth is a lie?" Appellant said, "Yes."

**B. Discussion**

Appellant argues that the evidence "creates significant doubt as to whether [a]ppellant was correctly identified as the perpetrator." We disagree. Throughout Mandy's direct examination and cross-examination, it is abundantly clear that Mandy is describing events and incidents that occurred with appellant. As described above, the witnesses clearly set out that appellant is Mandy's former stepfather who is referred to as "Carlos" and that "J.C." is appellant's son. Therefore, viewing the evidence in the light most favorable to the verdict, we conclude that a rational fact finder could have found beyond a reasonable doubt based on the evidence and reasonable inferences from that evidence that appellant was the person who committed the charged offenses. *Whatley*, 445 S.W.3d at 166; *Brooks*, 323 S.W.3d 898–99. We overrule appellant's first issue

8

### III.    PENETRATION

By his second issue, appellant contends that Mandy's "testimony only indicated that he touched her without providing sufficient detail to meet all elements of the charged offense." We construe this argument as challenging the element of penetration.

"[I]n common parlance, mere contact with the outside of an object does not amount to a penetration of it." *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992). However, "pushing aside and reaching beneath a natural fold of skin into an area of the body not usually exposed to view, even in nakedness, is a significant intrusion beyond mere external contact." *Id.* Therefore, penetration occurs if the touching as described by the victim can be "regarded by ordinary English speakers as more intrusive than contact with her outer vaginal lips." *Id.*

Here, Mandy testified that appellant rubbed her clitoris. The State's expert witness, Sonja Eddleman, a sexual assault nurse examiner, testified that the area of a female vagina inside the labia majora is the female sexual organ.[2] The State's expert witness agreed with the State that "anything past the labia majora is considered penetration." Viewing the evidence in the light most favorable to the verdict, we conclude that a rational fact finder could have found beyond a reasonable doubt based on the evidence and reasonable inferences from that evidence that appellant's touching was more intrusive than contact with her outer vaginal lips and thus, constituted penetration. *See Vernon*, 841 S.W.2d at 409–10; *Karnes v. State*, 873 S.W.2d 92, 96 (Tex. App.—Dallas 1994, no pet.) ("Touching beneath the fold of the external genitalia amounts to penetration within

---

[2] Eddleman did not examine Mandy in this case.

9

the meaning of the aggravated sexual assault statute."); *see also Whatley*, 445 S.W.3d at 166; *Brooks*, 323 S.W.3d 898–99; *Manzanarez v. State*, No. 05-22-00671-CR, 2024 WL 260481, at *3 (Tex. App.—Dallas Jan. 24, 2024, no pet.) (mem. op., not designated for publication) ("It is proper to describe Manzanarez's touching of S.T. in this case as penetration, as contact with her clitoris or the area below the plane of her labia majora could reasonably be regarded as more intrusive than just contact with her outer vaginal lips."); *Levitz v. State*, No. 08-99-00200-CR, 2001 WL 225934, at *3 (Tex. App.—El Paso Mar. 8, 2001, no pet.) (mem. op., not designated for publication) ("[P]enetration between the labia is sufficient to establish penetration of the female sexual organ even if the vagina was not entered."); *Buckner v. State*, No. 14-97-01399-CR, 1999 WL 649098, at *4 (Tex. App.—Houston [14th Dist.] Aug. 26, 1999, no pet.) (mem. op., not designated for publication) ("[A]ny penetration of the female sexual organ, not just the vagina, is sufficient to show sexual assault."). We overrule appellant's second issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
24th day of April, 2025.

10